491 P.2d 223

**Beth Larene Winkler GRAHAM, for herself and as Guardian of the Estates of Teri Lynn Graham, et al., Plaintiffs,**

v.

**The INDUSTRIAL COMMISSION of Utah and Ward Foods, Inc., American Sheep Company Division, Defendants.**

**No. 12398.**

Supreme Court of Utah.

Nov. 30, 1971.

den State Bank v. Barker, 12 Utah 13, 40 P. 765.

Denis R. Morrill, of Mulliner, Prince & Mangum, Salt Lake City, for plaintiffs.

Vernon B. Romney, Atty. Gen., W. J. O'Connor, Jr., of Ray, Quinney & Nebeker, Salt Lake City, for defendants.

ELLETT, Justice:

██ Plaintiff's husband while temporarily in California and while in the course of his employment lost his life in a head-on collision. Although he lost his life in California, he was employed in Utah, and his dependents are entitled to compensation according to the law of Utah.[1] The plaintiff on behalf of herself and her six minor children is entitled to an award under the compensation insurance laws of Utah of approximately $20,000 against the insurance carrier of deceased's employer, to wit, the Travelers Insurance Company.[2]

Prior to filing a claim with the defendant Industrial Commission, the plaintiff herein retained counsel and settled her case against the driver of the vehicle which was involved in the fatal accident for $95,000. The Industrial Commission then refused to make an award upon the grounds that plaintiff had already received from the third-party tortfeasor a sum of money in excess of any possible award to which she would be entitled under the Utah law.

██ Had the Commission first made an award to the plaintiff, the Travelers Insurance Company would have paid the

1. Section 35-1-54, U.C.A.1953.

2. Section 35-1-45, U.C.A.1953.

same, and then either it or the heirs or personal representatives of the deceased could have sued the third-party tortfeasor for the wrongful death of plaintiff's husband. Any money recovered from the third-party tortfeasor would be disbursed according to the following statutory provisions: [3]

(1) The reasonable expense of the action, including attorneys' fees, shall be paid and charged proportionately against the parties as their interests may appear.

(2) The person liable for compensation payments shall be reimbursed in full for all payments made.

(3) The balance shall be paid to the injured employee or his heirs in case of death, to be applied to reduce or satisfy in full any obligation thereafter accruing against the person liable for compensation.

This court has heretofore held that subsection (1) above requires each party to bear its share of attorney's fee and expenses before making the distribution of the funds.[4]

It is clear that had the Industrial Commission made the award required by the statute, the insurance carrier would have been obligated to pay its share of expenses before it could be reimbursed for the money it had paid plaintiff.

Under the rulings made by the Industrial Commission in this case, the plaintiff by her efforts caused an undeserved windfall to the insurance carrier in that it was required to pay nothing whatsoever on its obligation to the plaintiff—not even a proportionate share of the expenses incurred by the plaintiff for the carrier's benefit.

We can see no reason why there should be any difference in the final result whether the third party pays before or after an award is made.

The matter is remanded to the Industrial Commission with directions to determine the proper award to be made to plaintiff. If the parties cannot agree that the fee charged by plaintiff's attorney [5] is reasonable, then the Commission should not release the money to the plaintiff for 30 days in order that the insurance carrier would have an opportunity to bring an appropriate action in the District Court to determine the proper amount of legal expenses in connection with the settlement with the third-party tortfeasor.

If the interested parties can agree on the reasonableness of the fee and expenses incurred in connection with recovery from

---

3. Section 35–1–62, U.C.A.1953.

4. Worthen v. Shurtleff and Andrews, Inc., 19 Utah 2d 80, 426 P.2d 223 (1967).

5. Contingent fee of 25 per cent.

the third party, then the award minus any amount heretofore paid to plaintiff less the proportionate share of plaintiff's expenses should be released to plaintiff. In other words, the net award to the plaintiff would be the amount of the total expenses multiplied by a fraction, the numerator of which would be the award and the denominator of which would be $95,000, less any amount heretofore paid to plaintiff. The insurance carrier would thus be out of pocket exactly the same amount of money as it would have been had the award been made before the recovery from the third-party tortfeasor, i. e., its proportionate share of the expenses necessarily incurred in securing a recovery from the tortfeasor.

The plaintiff is entitled to costs including a reasonable attorney's fee pursuant to Section 35–1–87, U.C.A.1953.

TUCKETT and CROCKETT, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent because I think the main opinion is based on "if" assumptions not germane to nor dispositive here. It says that "Had the Commission first made the

1. Which compensation was not claimed.

2. There was no determination that the carrier was obligated at all.

3. The carrier was never a trustee of the cause of action, although it had the ab-

award, the Travelers would have paid" it. The Commission made no award because no claim was filed with it until after a third-party settlement amounting to about five times the amount provided as a maximum under the Utah Unemployment Act. The settlement was made without anyone bothering to file a claim, which fact obviously did not comply with the very statute under which they now claim attorneys' fees, 35–1–62, which requires the filing of a claim with the Commission as a condition precedent to recovery of attorneys' fees when it says that "If compensation is claimed[1] and the . . . insurance carrier becomes obligated to pay compensation,[2] the . . . carrier *shall become trustee*[3] of the *cause of action* against the third party and may bring and maintain the action either in its own name or in the name of the injured employee . . .."[4] No compensation was claimed, the insurance carrier was not consulted nor put on the risk, but applicants chose to undercut 35–1–62 and employ their own private counsel to pursue the third-party claim, not under the statute but in violation of it.

Using the same kind of reasoning employed in the main opinion, had a claim been filed with the Commission, the likeli-

solute right to choose such status before there could be any splitting of fees.

4. The carrier had no choice in the matter before the applicants procured a settlement.

hood is that, as is the case with almost all the claims filed, an award of $20,000, under the circumstances of this case would have been made without any resort to the employment of an attorney, and hence attorneys' fees would not have been involved at all, in which event 35–1–62 would have been inapplicable. To deviate from the statute having to do with attorney-fee apportionment and then contract with independent counsel to pay a stipulated attorney's fee to pursue a third-party claim without first allowing the Commission an opportunity to eliminate such fee by making an award where no fees are necessary or advisable and almost predictably so, and thereafter, and after the large settlement made, to file a so-called claim for an award for the obvious purpose of recovering some attorneys' fees already paid and agreed to without the Commission's knowledge or consent, is quite unconscionable, an unwarranted use of Utah taxpayers' money to employ or attempt to employ a state compensation agency as a collection agency, violates completely the letter and spirit of the workmen's compensation law, does not adhere to 35–1–62 in at least two respects, and what is more, attempts to circumvent the obvious purpose of 35–1–87, which says that "In all cases *coming before the industrial commission* in which *attorneys have been employed,* the commission is vested with *full power to regulate and fix the fees* of such attorneys." To succumb to the urgence of the applicants sanctions some sort of glorified "nunc pro tunc" vehicle not authorized either under the act or in good conscience.

The main opinion suggests that because of applicants' efforts, the order of the Commission resulted in an undeserved windfall to the carrier. The order did no such thing, since nothing had been before it that would have allowed the Commission to exercise any discretion whatever. If there was a windfall, it was because the applicants, through competent counsel made a settlement, which settlement resulted in the windfall, if any there might be, and the applicants now seek an undeserved windfall by a devious route and what I believe to be an inaccurate reasoning with respect to the construction of the act and the purpose for its existence. (All emphasis added.)

CALLISTER, C. J., concurs in the dissenting opinion of HENRIOD, J.