508 P.2d 38

Jerry K. LANIER, Plaintiff and Respondent,

v.

Harold D. PYNE and Gibbons & Reed Company, a corporation, Defendants and Respondents,

Liberty Mutual Insurance Company, Intervenor and Appellant.

No. 12918.

Supreme Court of Utah.

March 23, 1973.

Richard H. Moffat, Moffat, Welling, Taylor & Paulsen, Salt Lake City, for intervenor and appellant.

Gayle Dean Hunt, Dwight L. King, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Plaintiff, Jerry K. Lanier, while driving a yellow cab was injured in a collision with a truck belonging to Gibbons & Reed Con-

struction Company. For his injury and disability he was paid workmen's compensation totaling $3,301.22 by Liberty Mutual Insurance Company. Meanwhile, the plaintiff had employed his own attorneys on a one-third contingent fee basis to sue Gibbons & Reed for about $100,000 for negligently causing him injuries and damage, as permitted by Section 35–1–62, U.C.A. 1953.

During the pendency of the action, Liberty Mutual, through its attorneys, intervened, asserting its right to subrogation to plaintiff's claim against Gibbons & Reed. Prior to trial the suit was settled for the sum of $14,000.

It is not questioned that Liberty Mutual was entitled to reimbursement for the $3,301.22 it had paid to the plaintiff. The controversy is over whether it must bear its proportionate share of the fees paid to the plaintiff's attorneys. Heretofore there was concededly some uncertainty in our statute, Sec. 35–1–62, as it formerly read:

. . . If any recovery is obtained against such third person it shall be disbursed as follows:

(1) The reasonable expense of the action, including attorneys' fees, shall be paid and charged proportionately against the parties as their interests may appear.

(2) The person liable for compensation payments shall be reimbursed in full for all payments made.

In the case of Worthen v. Shurtleff and Andrews, Inc.,[1] and other cases we have held that the plaintiff and the subrogated insurance carrier should each bear its proportionate share of the costs and the attorney's fees incurred in obtaining the recovery. The legislature has since amended paragraph (2) of Sec. 35-1-62, U.C.A.1953, so that it now provides:

(2) The person liable for compensation payments shall be reimbursed in full for all payments made *less the proportionate share of costs and attorneys' fees provided for in subsection (1)*.[2] [Emphasis added.]

The addition of the emphasized language to the statute seems plainly intended to eliminate the previously existing uncertainty and to make it clear that "the person liable for compensation payments [Liberty Mutual] shall be reimbursed in full for all payments made less the proportionate share of costs and attorneys' fees", so that the insurance carrier will bear its proportion of these expenses, instead of having them come entirely out of the plaintiff's share of the settlement.

However, by indulging in a process of rationalization, and by following a procedure presently to be stated, Liberty Mutual contends that notwithstanding the amendment, it is still not obliged to bear any portion of plaintiff's attorney's fees. This contention is based on the following propositions: that by reason of its right of subrogation, it properly intervened in the action; that inasmuch as it would be required to pay attorney's fees, it should be privileged to choose its own attorneys; that it notified the plaintiff and his attorneys that it did not desire their representation; and that its own attorneys would protect its interests. Liberty Mutual does not disagree with the cases above referred to, but asserts that this one is different because in none of them does it appear that the plaintiff was put on notice, as he was here, that the insurance carrier had hired its own counsel and would protect its own interest. It thus raises what it asserts to be the sole issue in this case: that when it has thus hired its own counsel and given such notice, it is not required to participate in proportional payment of the costs and attorney's fees incurred by the plaintiff.

The answer to this argument of Liberty Mutual is that its effect would be to allow the insurer, by the simple expedient of de-

1. 19 Utah 2d 80, 426 P.2d 223 (1967); Graham v. Industrial Commission, 26 Utah 2d 424, 491 P.2d 223 (1971); Prettyman v. Utah State Department of Finance, 27 Utah 2d 333, 496 P.2d 89 (1972).

2. Laws of Utah 1971, Ch. 76, Sec. 3.

claring in advance that it would not abide by the statute, to defeat the plainly stated legislative intent that the insurer's reimbursement should be " . . . less the proportionate share of costs and attorneys' fees . . . " incurred in the action. This certainly was intended to apply to the attorney's fees incurred by the plaintiff. The trial court correctly so ruled and required Liberty Mutual to participate in its proportional share of the costs and attorney's fees the plaintiff had incurred in obtaining the settlement, which assured the reimbursement for Liberty Mutual. It should be here restated, as was indicated in the Worthen case, supra, that Liberty Mutual's obligation was only to pay its proportionate share of a "reasonable" attorney's fee as determined by the court, and not necessarily an amount contracted for by the plaintiff.

We are not insensitive to the possibility of problems which could arise as suggested by the arguments of Liberty Mutual: e. g., where the injured workman does not promptly bring his action; or where the carrier has made extensive investigation, which is made available to the plaintiff; and/or where its subrogation is obviously to the larger proportion of the claim against a third party; and/or where there is a basis for genuine concern as to the inadequacy of counsel chosen by the plaintiff. With respect thereto we make the following observations: The first and controlling one

in this case is that the trial court did not find them to exist here. It is plainly apparent from the possibility of having to bear part of plaintiff's attorney's fees. The trial court found that the action was initiated and the settlement obtained solely through the efforts of the plaintiff and his attorneys. This reinforces the justification for the trial court's conclusion that the requirement of the statute quoted above (Sec. 35–1–62, Subsection (2), as amended), must be met by reimbursement of Liberty Mutual for the payments it had made "less the proportionate share of costs and attorneys' fees" incurred by plaintiff in obtaining the settlement. We could there write "sufficient unto the day is the evil thereof", consider the matter finished, and let other problems abide until presented in genuine controversy.

■ However, counsel have assured us of their concern with possible difficulties in other such cases. With respect thereto, and also as bearing upon the decision we have arrived at in this case, we offer these further comments: Considerations of reason and policy impel the conclusion that the plaintiff, the one who has suffered the injury and damage, should have basic ownership and control of his cause of action. It is most natural to suppose that he will try to obtain the maximum possible recovery. But the insurance carrier has first preference for reimbursement for the amount it has paid as compensation, and

the plaintiff can have only any excess that he is able to obtain. This is true notwithstanding the fact that said Section 62 states that when the carrier pays compensation it shall become "[the] trustee of the cause of action." It is the trustee for the plaintiff, the true beneficiary and owner thereof. The interest of the carrier extends only to the amount of compensation it has paid; and its only real interest is to obtain its full reimbursement. Except for any altruistic motive it may or may not have for the plaintiff, it has no incentive to obtain further recovery for him.

■ It is because of the policy considerations just stated, and the sequence of the grant in the statute, that we think it reasonable to conclude that the rights conferred upon the insurance carrier should be regarded as secondary to the plaintiff's interest, and so conferred as a safeguard to the carrier and to thus afford it a means of protecting its interest in case the injured employee does not do so. But this prerogative granted the insurance carrier should not be deemed to diminish or adversely affect the right of the injured employee to proceed against the third party.[3] This is in accord with the purpose of the Workmen's Compensation Act, which is to benefit injured employees and not to impair or

destroy natural rights which exist by reason of the common law to sue for the redress of wrongful acts.[4]

■ With respect to all of these matters it is further pertinent to note that the district court, which has jurisdiction of such actions, upon proper application, and due consideration of the facts shown, in light of its plenary powers in administering law and equity,[5] can make such orders as are necessary and expedient in order to do justice between the parties as the particular circumstances warrant.[6]

Affirmed. Costs to plaintiff as against intervenor Liberty Mutual Insurance Company.

ELLETT and TUCKETT, JJ., concur.

HENRIOD, Justice (dissenting):

Respectfully I dissent. This case and the Worthen case, and the others cited in the main opinion, in my opinion, flout the purpose of workmen's compensation. They allow an attorney's fee to get an award from the Industrial Commission—at taxpayers' expense, and I think another attorney's fee of 33⅓% to sue a third party, and then another 33% or 50% for whatever is collected from the insurance company by virtue of a statute that flies in the teeth

---

3. See Rogalski v. Phillips Petroleum Co., 3 Utah 2d 203, 282 P.2d 304 (1955).

4. Larson, Workmen's Compensation Law, Vol. 2, Secs. 71:10–75:40.

5. Utah Const., Art. VIII, Sec. 19.

6. See discussion in Munson v. Nelson, 289 Minn. 99, 182 N.W.2d 709 (1970).

of the purpose and intent of the Workmen's Compensation statute: that of paying compensation, from statutory funds, intended for compensation of the worker's family budget.

The majority opinion blushingly should admit to the rendering of obeisance and comfort to someone other than the person for whom the statute should be, and for whom it was passed.

CALLISTER, C. J., concurs in the dissenting opinion of HENRIOD, J.