1999 UT App 009

**Edward ESQUIVEL, deceased; Norma Esquivel; Richard Esquivel; Angel Esquivel; Edica Esquivel; and Ofelia Herrera, Petitioners,**

v.

**LABOR COMMISSION, Redd Roofing & Construction Co., and CNA Co., Respondents.**

No. 981084–CA.

Court of Appeals of Utah.

Jan. 22, 1999.

Robert B. Sykes and Ron J. Kramer, Salt Lake City, for Petitioners.

Theodore E. Kannell and Stephen P. Horvat, Salt Lake City, for Respondents Redd Roofing & Construction Co. and CNA Company.

Alan Hennebold, Salt Lake City, for Respondent Labor Commission.

Before Judges GREENWOOD, BENCH and GARFF.[1]

OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 The dependents of Edward Esquivel petition this court for review of an order of

1. Senior Judge Regnal W. Garff sitting by special appointment pursuant to Utah Code Ann. § 78– 2–4(2)(1996); Utah Code Jud. Admin. R3–108(4).

the Utah Labor Commission's Appeals Board (the Board), holding that respondents Redd Roofing & Construction Co. (Redd Roofing) and CNA Insurance Co. (CNA) were entitled to an offset against their future workers' compensation payment obligation to the dependents because the dependents had obtained a third-party tort judgment for the death of Esquivel. We affirm the Board's order.

### BACKGROUND

¶ 2   On April 26, 1993, Esquivel was fatally injured when he fell through a warehouse roof at the Freeport Center in Clearfield, Utah, while working as a roofer for Redd Roofing. At the time of the accident, Esquivel was sweeping gravel from the roof with a Gravely International (Gravely) brand sweeping machine.

¶ 3   Redd Roofing's workers' compensation insurance carrier, CNA, began paying the statutorily required workers' compensation benefits to the dependents in 1993. In March 1994, the dependents settled a negligence lawsuit against the Freeport Center, the owner of the building where the accident occurred, and received $375,000. The dependents and CNA entered into an agreement, approved by the Utah Labor Commission (Commission), requiring CNA to pay $205 per week for as long as the dependents were entitled to benefits under the Workers' Compensation Act.

¶ 4   The dependents filed a product liability suit in federal court against Gravely, the manufacturer of the sweeping machine Esquivel was using at the time of the industrial accident. The dependents obtained a judgment in the amount of $203,507.25. Upon learning of this judgment, CNA discontinued its weekly payments to the dependents. CNA asserted that because the dependents had received third-party tort compensation, it was no longer required, under Utah's

third-party tort compensation statute, to continue making workers' compensation payments. See Utah Code Ann. § 34A–2–106(5) (1997).[2]

¶ 5   On July 10, 1996, the dependents filed an Application for Hearing before the Commission, contending that CNA had wrongfully discontinued workers' compensation payments. CNA countered that it was entitled to an offset against future payments because of the third-party tort recovery. CNA waived any right to reimbursement for payments already made. After a hearing before an Administrative Law Judge (ALJ), the ALJ ordered CNA to resume weekly compensation payments to the dependents.

¶ 6   In his Findings of Fact and Conclusions of Law and Order, the ALJ found that attorney fees in the Gravely suit were $81,-402.90 and costs were $53,596.38, for a total case "expense" of $134,999.28. After deducting this expense from the $203,507.25 judgment, a net recovery of $68,507.97 remained. The ALJ found that because CNA's future obligation exceeded the net judgment, it was responsible for 100% of the attorney fees and costs. The ALJ also determined that CNA's lien amount must be reduced by those fees and costs, thus eliminating that lien. Finally, the ALJ held that the dependents could retain the entire net judgment of $68,507.97, and that no amount would be credited against future payments owed by CNA.

¶ 7   CNA and Redd Roofing filed a Motion for Review with the Board, claiming the ALJ had mistakenly subtracted fees and costs twice, effectively denying CNA its offset. In its Order Granting Motion for Review, the Board reversed the ALJ and determined CNA was entitled to an offset of the $68,507.97 net judgment against its future obligations.

¶ 8   Relying on Utah Administrative Code Rule 612–1–4,[3] the Board also ruled that

**2.** This statute was previously numbered § 35–1–62 (1993). In 1997, the Utah Legislature revised Title 35, created Title 34A, and replaced the Industrial Commission with the Labor Commission. See Utah Code Ann. § 34A–1–103 (1997). This revision resulted in the renumbering of many of the sections on workers' compensation. However, because the sections in effect at the

time of the hearing below do not differ materially from current statutory provisions, we cite to the most recent statutes in this opinion.

**3.** Rule 612–1–4 provides that
[e]ight percent shall be used for any discounting or present value calculations. Lump sums ordered by the Commission or for any attorney

CNA could "determine the extent of its offset by using an 8% discount rate to comput[e] the present value of its future liability," and determined that "[t]he *present value* of Redd Roofing's liability for future dependents' benefits, to be offset by the [Gravely suit] award [of $68,507.97], is $83,000."

¶ 9 The dependents filed a Petition for Review with this court.

## ISSUES

¶ 10 Two issues must be resolved on appeal: First, whether the Board erroneously held that CNA was entitled to offset the full balance of the net proceeds from the third-party tort recovery against its future compensation liability to the dependants; and second, whether the Board erroneously permitted CNA to apply Utah Administrative Code Rule 612–1–4 and discount its future obligation for workers' compensation benefits by eight percent to arrive at a present value.

## STANDARD OF REVIEW

■ ¶ 11 We will not disturb an agency's ruling unless petitioners can establish they have been "substantially prejudiced" by the agency's erroneous interpretation or application of the law. *See* Utah Code Ann. § 63–46b–16(4)(d) (1997 & Supp.1998). In addition, the Legislature has granted the Commission broad discretion to determine the facts and apply the law. *See* Utah Code Ann. § 34A–1–301 (1997) ("The commission has the duty and the full power, jurisdiction, and authority to determine the facts and apply the law in this chapter or any other title or chapter it administers."). We have previously held that the statute's "grant of discretion to the Commission to apply the law requires that we apply an intermediate standard of review to its determinations." *Osman Home Improvement v. Industrial Comm'n*, 958 P.2d 240, 243 (Utah Ct.App. 1998) (citing *Caporoz v. Labor Comm'n*, 945 P.2d 141, 143 (Utah Ct.App.1997)). Thus, we will affirm the Board's application of the law

fees paid in a single up-front amount, or of any other sum being paid earlier than normally paid under a weekly benefit method shall be subject to the 8% discounting.

so long as it is reasonable. *See Caporoz*, 945 P.2d at 143.

## ANALYSIS

### I. Entitlement to Offset

■ ¶ 12 The dependents contend that the Board improperly determined that Redd Roofing and CNA have a "priority first right of reimbursement" in the third-party tort recovery that "takes precedence over the claimant's interest." CNA argues the Board properly applied the governing statute.

¶ 13 Distribution of proceeds of a third-party tort action under Utah's Workers' Compensation Act is addressed in section 34A–2–106(5), which states:

> (5) If any recovery is obtained against a third person, it shall be disbursed in accordance with Subsections (5)(a) through (c).
>
> (a) The reasonable expense of the action, including attorneys' fees, shall be paid and charged proportionately against the parties as their interests may appear. Any fee chargeable to the employer or carrier is to be a credit upon any fee payable by the injured employee or, in the case of death, by the dependents, for any recovery had against the third party.
>
> (b) The person liable for compensation payments shall be reimbursed, less the proportionate share of costs and attorneys' fees ... for [workers' compensation] payments made as follows:
>
> . . . .
>
> (c) The balance shall be paid to the injured employee, or the employee's heirs in case of death, to be applied to reduce or satisfy in full any obligation thereafter accruing against the person liable for compensation.

Utah Code Ann. § 34A–2–106(5).

¶ 14 In the dependents' lawsuit against Gravely, the jury returned a judgment in favor of the dependents in the amount of $814,029. However, the jury found Gravely only 25% at fault. The jury apportioned 25%

Utah Admin. Code 612–1–4 (1998).

of the fault to Esquivel and 50% to Redd Roofing.[4] Thus, the dependents were awarded a gross judgment of only 25% of the total damages; that is, they were awarded damages of $203,507.25.

¶ 15 The ALJ determined that attorney costs and fees totaled $134,999.28. After these fees and costs were deducted, the dependents' net award, or "balance" remaining, from the Gravely suit was $68,507.97. In apportioning the attorney fees between the dependents and Redd Roofing, the Board recognized that section 34A–2–106(5)(a) requires that fees and costs must be allocated between the parties "as their interests may appear." The Board stated that in determining the parties' interests, "it [was] important to note" that section 34A–2–106(5)(b) and (c) "grant the first right of reimbursement and offset to the insurance carrier." Thus, the Board reasoned, Redd Roofing's share of attorney fees and costs necessarily had to be determined first. Only thereafter could the dependents' share be determined, and, the Board held, would "then be limited to the amount of the award that remains after Redd Roofing's share has been deducted." The Board's order accordingly apportioned the parties' shares of attorney fees and costs as follows:

> In this case, the amount of the third party judgment actually available for allocation is $68,507.97, which represents the amount of the third party judgment after attorney fees and costs have been deducted. The present value of Redd Roofing's liability for future dependents' benefits, to be offset by the third party award, is $83,000. Because Redd Roofing's interest in the award is more than the net amount of the award itself, Redd Roofing holds the entire interest in the award. Consequently, all attorneys fees and costs must be allocated to Redd Roofing.

¶ 16 The Board then concluded that because the statute required that the "balance" be "applied to reduce" the insurer's future obligation, CNA was entitled to "use the third party award to offset its obligation to make weekly payments to the dependents until such time as the award has been exhausted."

¶ 17 The dependents contend the Board's order failed to properly allocate costs and fees to Redd Roofing/CNA. The dependents argue that because the entire $68,507.97 net judgment was offset against future workers' compensation benefits, the order is "manifestly unjust and contrary to the letter and spirit of [section] 106(5)."[5]

¶ 18 According to the dependents' interpretation of section 34A2–106(5), the statute requires a "three-step sequence for disbursement." First, the attorney fees and costs are to be paid, *see* Utah Code Ann. § 34A–2–106(5)(a) (1997), with the responsibility for this amount apportioned among the parties "as their interests may appear." The injured person receives "credit" against their share

---

4. Redd Roofing and CNA claim the dependents did not notify them of the Gravely action, nor of Gravely's attempt to attribute fault to Redd Roofing, in violation Utah Code Ann. § 34A–2–106(3) (1997) (requiring that "before proceeding against a third party . . ., the employee's heirs, shall give written notice of the intention to bring an action against the third party to: (i) the carrier; and (ii) any other person obligated for the compensation payments.")

5. Although the dependents assert that the Board's application of the governing statute is "unfair" because it gives the insurer priority over the employee in distributing third-party tort proceeds even when it is the employee who brings the action, we do not believe the application is unfair when viewed in the context of the entire workers' compensation scheme. Under our Workers' Compensation Act, the insurer guarantees compensation to all injured employees covered under its insurance, regardless of fault. *See*

Utah Code Ann. § 34A–2–401(2) (1997) (responsibility for payment of compensation for employment-related injury rests with employer); *see id.* § 34A–2–207(1)(a) (1997) (failure to obtain workers' compensation insurance subjects employer to liability in civil action brought against it by injured employee). The insurer is required to pay compensation even if the accident is entirely the fault of the employee or of an unrelated third party. In exchange, however, the insurer receives priority in the distribution of any third-party tort proceeds. *See id.* § 34A–2–106(5)(b). Thus, the statutory scheme ensures that the injured employee receives compensation in some form, which reduces the risk the employee might face if forced to file a civil liability action against the employer and/or third parties. In addition, we agree with CNA that the risk of filing an action and ending up with no net benefit is the same encountered in every civil action.

of attorney fees and costs for the amount apportionable to the employer/issuer. *See id.* Second, the insurer is to be reimbursed for amounts already paid to the injured party. *See id.* § 34A–2–106(5)(b). Third, the dependents assert, the insurer is to receive an "offset" against future benefits only *after* deducting the employee's "credit" for attorney fees and costs already paid by the carrier. This analysis requires that attorney fees and costs be deducted a second time from the "net judgment"—that is, from the amount remaining after attorney fees and costs have been deducted to arrive at the amount that should be "offset" against future workers' compensation payments. We do not agree with the dependents' description of this last step.

¶ 19   "Because we assume that the legislature used each term in the statute advisedly, we read the statute's words literally 'unless such a reading is unreasonably confused or inoperable.'" *Olsen v. McIntyre Inv. Co.,* 956 P.2d 257, 259 (Utah 1998) (citation omitted). Our supreme court has stated:

> The basic purpose of [the third party recovery] statute is that of making an equitable arrangement between an injured employee, and an insurer (or employer) who pays him workmen's compensation, with respect to a cause of action against a third party who injures the employee. It preserves the action to the employee, but it prevents him from having double recovery by requiring him to reimburse the insurer. It also gives the insurer the right to bring the action, but allows it only to reimburse itself and then pay any balance to the employee.

*Worthen v. Shurtleff & Andrews, Inc.,* 19 Utah 2d 80, 426 P.2d 223, 225 (1967). Consistent with this reasoning, the Board determined that subsections (b) and (c) of section 34A–2–106(5) require that any *balance,* after attorney fees and costs have been deducted, must either be used to compensate the insurer for payments already made, or be applied as an offset against future obligations. Because the $68,507.97 amounted to less than the total future benefits owed by CNA to the dependents, it merely "reduced" any future obligation by that amount. The Board determined that "[a]fter the amount of $68,507.97 has been [paid to the dependents and] fully offset against such future benefits, Redd Roofing must then resume payment" of the workers' compensation benefits.

¶ 20   We believe the Board reasonably applied the statutory scheme in determining the order in which the third party recovery is to be disbursed. Under *Worthen,* the statute's subsections are to be read as a whole, and the sequence in which the statute allocates funds should be regarded as "having some significance":

> If we do as the statute says and make the allocation provided for in paragraph [a] *first,* that is, charging the recovery [of] the costs and attorney's fees in proportion to the interests of the parties, the disbursement stated first is made first, and has priority over the provision for disbursement which follows it in paragraph [b]. *Then the reimbursement to the insurer is made from the funds remaining* and to the extent possible after the first requirement for disbursement is complied with.

*Id.* at 226. (Emphasis added.) We do not find any support in the statutory language or case law for the dependents' argument, and indeed, find that the case law sets forth the steps that must be taken when distributing third-party tort recoveries under section 34A–2–106(5). *See, e.g., Graham v. Industrial Comm'n,* 26 Utah 2d 424, 491 P.2d 223, 224 (1971) (holding statute requires each party bear its share of attorney fees and expenses before making distribution of funds); *Worthen,* 426 P.2d at 225. Therefore, we reject the distribution "formula" proposed by the dependents.[6]

## II. Discounting of Future Benefits to Present Value

¶ 21   Finally, the dependents argue the Board erred in discounting future benefits to present value under Utah Administrative Rule 612–1–4. CNA counters that be-

---

**6.** We note that the formula proposed by the dependents is taken from *Breen v. Caesars Palace,* 102 Nev. 79, 715 P.2d 1070 (Nev.1986), and was adopted under a different third-party tort recovery statutory scheme than Utah's.

cause the dependents failed to oppose CNA's request for discounting when it was presented to the Board, they have waived their right to challenge this portion of the Board's order.

¶ 22  "[I]ssues not raised in proceedings before administrative agencies are not subject to judicial review except in exceptional circumstances." *Brown & Root Indus. v. Industrial Comm'n,* 947 P.2d 671, 677 (Utah 1997); *see also Werner–Jacobsen v. Bednarik,* 946 P.2d 744, 748 (Utah Ct.App.1997) (denying consideration of issues first raised on appeal); *Alvin G. Rhodes Pump Sales v. Industrial Comm'n,* 681 P.2d 1244, 1249 (Utah 1984) (precluding party who failed to raise issue before administrative agency from raising issue on appeal).

¶ 23  Although CNA requested present-value discounting of its future payment obligation to the dependents, the dependents' response did not directly address the issue. Because the transcript was not included in the record on appeal, it is impossible for us to determine whether there was any discussion at the hearing regarding this issue. Additionally, the dependents' brief has failed to address how this issue was preserved for appeal. *See* Utah R.App. P. 24(a)(5)(A) ("The brief of the appellant shall contain ... a statement of the issues presented for review ... and citation to the record showing that the issue was preserved in the trial court."). Because the issue was not raised before the Board, and because the dependents' brief on this issue does not conform to our Rules of Appellate Procedure, the dependents have waived their right to appeal this issue.

### *CONCLUSION*

¶ 24  We conclude that the Board reasonably determined that Redd Roofing/CNA was responsible for 100% of the attorney fees and costs, and that the remaining "net" judgment of $68,507.97 would offset future workers' compensation amounts owed by CNA. Additionally, the dependents waived the issue of whether the Board should have permitted CNA to discount its future obligation for workers' compensation payments to the dependents by eight percent under Utah Ad-

ministrative Code Rule 612–1–4. The order of the Appeals Board of the Utah Labor Commission is therefore affirmed.

¶ 25  BENCH, Judge and GARFF, Senior Judge, concur.