2016 UT App 38

# THE UTAH COURT OF APPEALS

EVERETT P. WILSON JR. AND DARLA WILSON,
Appellants,
*v.*
EDUCATORS MUTUAL INSURANCE ASSOCIATION,
Appellee.

Opinion
No. 20150150-CA
Filed February 25, 2016

Fourth District Court, Provo Department
The Honorable Samuel D. McVey
No. 110400083

Jack C. Helgesen and Craig Helgesen, Attorneys
for Appellants

Randall R. Smart and Jeffrey A. Callister, Attorneys
for Appellee

SENIOR JUDGE PAMELA T. GREENWOOD authored this Opinion, in
which JUDGES MICHELE M. CHRISTIANSEN and KATE A. TOOMEY
concurred.[1]

GREENWOOD, Senior Judge:

¶1    Everett P. Wilson Jr. and Darla Wilson appeal the trial court's order awarding a portion of interpleaded funds to Educators Mutual Insurance Association (EMIA). We reverse and remand.

---

1. Senior Judge Pamela T. Greenwood sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

## BACKGROUND

¶2    On September 19, 2010, the Wilsons' daughter, Jessica, was killed after having been struck by a vehicle driven by Cade Krueger. EMIA, Jessica's insurer, paid nearly $79,000 in medical expenses on her behalf. No personal representative was sought or appointed for Jessica's estate.

¶3    The Wilsons filed a wrongful death claim against Krueger on January 12, 2011, seeking damages for the loss, love, and affection of their daughter and for funeral expenses. After several years of discovery and litigation, the Wilsons reached a tentative settlement with Krueger's insurer for the $100,000 limit on his insurance policy.

¶4    On January 22, 2014, EMIA filed a "Complaint for Subrogation Claim" against Krueger, seeking reimbursement for medical expenses it had paid on Jessica's behalf, with accrued interest.[2] EMIA asserted its subrogation claim pursuant to the terms of its insurance contract with Jessica. All parties agreed to consolidate the cases, and Krueger filed an interpleader counterclaim against both the Wilsons and EMIA, in which his insurer agreed to interplead the $100,000 policy limit with the court. EMIA and the Wilsons agreed to accept the $100,000 in settlement of their claims against Krueger but disagreed as to how the funds should be distributed. EMIA and the Wilsons agreed to dismiss Krueger from the lawsuit with prejudice. The trial court ordered Krueger's insurer to deposit the $100,000 with the court and gave the parties the opportunity to file briefs in support of their competing claims to the funds.

---

2. EMIA had initially asserted a lien against the Wilsons' wrongful death claim but later acknowledged that it could not assert such a lien "against payments to the heirs of a deceased on a wrongful death claim."

¶5     The Wilsons asserted that they were entitled to the entire $100,000 settlement. They raised a number of arguments in support of this position, including that they have "superior equity" over a subrogated insurer and are therefore entitled to be "made whole" before the insurer is paid, that EMIA had no legal right to pursue a cause of action against Krueger in its own name, and that EMIA's action was barred by a three-year statute of limitations.

¶6     The trial court ultimately rejected the Wilsons' arguments and divided the settlement money equally between the Wilsons and EMIA after finding that each party had incurred damages in excess of $100,000. However, in acknowledgment that the Wilsons' efforts to obtain the settlement had been disproportionate to those of EMIA, the trial court determined that the Wilsons were entitled to $25,817.69 of EMIA's award to reimburse them for a portion of their attorney fees. Accordingly, the trial court awarded $75,817.69 to the Wilsons and $24,182.31 to EMIA. The Wilsons now appeal.

ISSUE AND STANDARD OF REVIEW

¶7     The Wilsons raise a number of arguments in support of their assertion that the trial court erred in awarding EMIA a portion of the settlement. Because we agree with the Wilsons that EMIA lacked standing to bring a subrogation action in its own name rather than in the name of Jessica or Jessica's estate, we do not address the Wilsons' other arguments. As this question involves the interpretation of a statute, as well as decisional precedents, we review the trial court's ruling for correctness. *See MacFarlane v. Utah State Tax Comm'n*, 2006 UT 25, ¶ 9, 134 P.3d 1116 ("A matter of statutory interpretation [is] a question of law that we review on appeal for correctness." (alteration in original) (citation and internal quotation marks omitted)); *In re Adoption of A.F.K.*, 2009 UT App 198, ¶ 16, 216 P.3d 980 (explaining that "issues that require interpretation of

prior decisional precedents" are "questions of law that are reviewed for correctness" (citation and internal quotation marks omitted)).

ANALYSIS

¶8     Utah's subrogation statute provides, "Subrogation actions may be brought by the insurer in the name of its insured." Utah Code Ann. § 31A-21-108 (LexisNexis 2014). EMIA asserts that the use of the word "may" implies that the insurer *may* bring the action in the name of the insured but is not required to do so and may instead choose to bring the action in its own name. *See State v. Gallegos*, 967 P.2d 973, 978 (Utah Ct. App. 1998) ("[T]he term 'may' is generally construed to be permissive and not mandatory . . . ." (citation and internal quotation marks omitted)). We assume, without deciding, that the statute's use of the permissive "may" allows for the possibility that bringing an action in the name of the insured is not the exclusive manner for an insurer to pursue a subrogation claim.[3] Nevertheless, the

_____

3. Though we assume for purposes of our analysis that the permissive "may" applies to the manner in which the insurer brings the action, i.e., in its own name or in the name of another, we recognize that the legislature may have intended the word "may" to grant the insurer discretion only as to whether to bring the action at all. *Cf. Thorpe v. Washington City*, 2010 UT App 297, ¶¶ 23–24, 243 P.3d 500 (rejecting the assertion that language providing that "[a] final action or order of [a municipal employee] appeal board may be appealed to the Court of Appeals" could be interpreted as permitting a party to appeal in another venue, explaining that the language "is not permissive in the sense that the employee may seek review in the court of appeals if he likes but may complain in some other judicial venue if he prefers" but that, "[o]n the contrary, the statute is

(continued…)

statute contains no language *granting* an insurance company the right to bring a subrogation action in its own name.[4] So even assuming that bringing an action in the name of the insured is not, statutorily, the exclusive method for bringing suit, there must be some legal basis, apart from the statute as currently written, authorizing the insurer to bring the action in its own name. *Cf. Dehm v. Dehm*, 545 P.2d 525, 528 (Utah 1976) (providing that permissive language in a statute "does not foreclose the right of a person" to pursue a remedy "by any other means *provided by law*" (emphasis added)). Our review of Utah case law convinces us that, with the possible exception of an insurer who has fully indemnified the insured for all damages for which the wrongdoer could be held liable, *see Johanson v. Cudahy Packing Co.*, 152 P.2d 98, 103 (Utah 1944), no

---

(…continued)
clear that the only court to which the employee may seek initial recourse . . . is the Utah Court of Appeals" (first alteration in original)).

4. Conversely, the legislature *has* expressly granted insurers seeking reimbursement for the payment of workers' compensation benefits the authority to bring such actions in their own names:

> If compensation is claimed and the employer or insurance carrier becomes obligated to pay compensation, the employer or insurance carrier:
> (i) shall become trustee of the cause of action against the third party; and
> (ii) may bring and maintain the action *either in its own name or* in the name of the injured employee, or the employee's heirs or the personal representative of the deceased.

Utah Code Ann. § 34A-2-106(2)(a) (LexisNexis 2011) (emphasis added).

independent right exists for an insurer to seek subrogated damages in its own name.

¶9      First, EMIA does not have a direct cause of action against Krueger. "An insurer's subrogation right to recover from a responsible third party the amount the insurer paid to or on behalf of its insured derives from the insurance contract between the insurer and the insured," and its causes of action against that third party are limited "to those rights or causes of action that the insured possesses against the third party." *Bakowski v. Mountain States Steel, Inc.*, 2002 UT 62, ¶ 23, 52 P.3d 1179. "[E]ven though the insurance company is subrogated to a part of the claim of the plaintiff, against the defendant, that does not create another cause of action and there can only be one suit to recover on that cause of action." *Cederloff v. Whited*, 169 P.2d 777, 780 (Utah 1946).

¶10     Further, "it has been generally held that a suit at law to enforce [a] right of subrogation must, at common law, be brought in the name of the insured, rather than by the insurance company in its own name and right." *Johanson*, 152 P.2d at 104 (citation and internal quotation marks omitted); *see also* Utah R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the real party in interest. . . . [A] party authorized by statute may sue in that person's name . . . ."). "The reason for the rule is that the wrongful act" of the third party being sued "is single and indivisible, and gives rise to but one liability." *Johanson*, 152 P.2d at 103. Permitting an insurer to sue in its own name, except where it has fully indemnified the insured, could compel the wrongdoer to "defend a multitude of suits" against multiple insurance companies, the insured, and/or the insured's dependents or heirs. *Id.*

¶11     Furthermore, "[c]onsiderations of reason and policy impel the conclusion that the plaintiff, the one who has suffered the injury and damage, should have basic ownership and control of

his cause of action." *Lanier v. Pyne*, 508 P.2d 38, 40 (Utah 1973). Even under statutory schemes that give the insurance carrier's right to reimbursement priority over the injured party's right to damages,[5] our supreme court has concluded "that the rights conferred upon the insurance carrier" to pursue an action against a third party "should be regarded as secondary to the plaintiff's interest" in controlling the cause of action. *Id.* Thus, at least where the insured or the insured's estate retains some interest in the potential damages, an insurance company cannot pursue a subrogation action in its own name.

¶12    After Jessica's death, her cause of action for personal injury passed to her estate by virtue of Utah's survival statute. *See* Utah Code Ann. § 78B-3-107(1)(a) (LexisNexis Supp. 2015) ("A cause of action arising out of personal injury to a person, or death caused by the wrongful act or negligence of a wrongdoer, does not abate upon the death of the . . . injured person. . . . [T]he personal representatives or heirs of the person who died, [have] a cause of action against the wrongdoer . . . ."). The survival statute grants the personal representatives or heirs of the injured decedent the right to pursue both "special and general damages"

---

5. In subrogation actions where the insurer has paid workers' compensation benefits, such as in *Johanson v. Cudahy Packing Co.*, 152 P.2d 98 (Utah 1944), and *Lanier v. Pyne*, 508 P.2d 38, 40 (Utah 1973), the Workers' Compensation Act expressly provides that the insurer is to be reimbursed before the employee or the employee's heirs. Utah Code Ann. § 34A-2-106(5); *see also Anderson v. United Parcel Serv.*, 2004 UT 57, ¶¶ 8–13, 96 P.3d 903. But in a case such as this, where the expenses paid by the insurer were not connected to a workers' compensation claim, "in the absence of express terms to the contrary, the insured must be made whole before the insurer is entitled to be reimbursed from a recovery from the third-party tort-feasor." *Hill v. State Farm Mut. Auto. Ins. Co.*, 765 P.2d 864, 866 (Utah 1988).

against the wrongdoer. *Id.* General damages include damages for the insured's pain and suffering, *Balderas v. Starks*, 2006 UT App 218, ¶ 16 n.5, 138 P.3d 75, which would have been separate from the medical expenses paid by EMIA on Jessica's behalf. Since Jessica's estate would presumably have been entitled to at least some portion of the damages recoverable in a personal injury action, EMIA should have brought its personal injury action in the name of the estate or intervened in the Wilsons' action against Krueger.[6] Instead, it filed an action in its own name, which Utah law does not permit. Because EMIA lacked standing to pursue a claim against Krueger in its own name, the trial court erred in awarding EMIA a portion of the interpleaded funds.

CONCLUSION

¶13   We conclude that EMIA lacked standing to pursue a subrogation action against Krueger in its own name. Thus, the trial court erred in dividing the Wilsons' settlement with EMIA. Accordingly, we reverse the trial court's order and remand with instructions for the trial court to dismiss EMIA's claims and award all of the interpleaded funds to the Wilsons.

_____

6. EMIA asserts that the correct approach would be to allow the insurer and the heirs to pursue separate claims to recover their respective shares of damages arising from a personal injury claim. Such an approach would unnecessarily subject the defendant to multiple suits for the same conduct, *see Johanson*, 152 P.2d at 103, and potentially compromise the heirs' superior right to recover their share of the personal injury claim, *see Hill*, 765 P.2d at 866. *See Cederloff v. Whited*, 169 P.2d 777, 780 (Utah 1946).