*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2017 UT 69**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

EVERETT P. WILSON JR. and DARLA WILSON,
*Respondents,*

*v.*

EDUCATORS MUTUAL INSURANCE ASSOCIATION,
*Petitioner.*

No. 20160227
Filed September 28, 2017

On Certiorari to the Utah Court of Appeals

Fourth District, Provo
The Honorable Samuel D. McVey
No. 110400083

Attorneys:

Randall R. Smart, Jeffrey A. Callister, Chad P. Curtis, Salt Lake City,
for petitioner

Jack C. Helgesen, Craig Helgesen, Layton, for respondents

Thomas M. Regan, Leslie A. Hulburt, San Diego, California,
for amicus curiae

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE DURHAM, JUSTICE HIMONAS,
and JUSTICE PEARCE joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶ 1    In this case we consider a subrogation action filed by
Educators Mutual Insurance Association (EMIA) against a tortfeasor in

a personal injury case. The court of appeals dismissed for lack of standing. It held that an insurer may sue for subrogation only in the name of its insured, not in its own name. We reverse on the basis of the terms of the insurance policy in question, which expressly recognize EMIA's authority "to pursue its own right of Subrogation against a third party" without regard to whether the insured "is made whole by any recovery."

I

¶ 2    This case arises out of a tragic accident. On September 19, 2010, Jessica Wilson was hit by a car while crossing the street. She died within hours of the accident, after incurring more than $100,000 in medical expenses. Her insurance provider, EMIA, covered $78,692.34 of those expenses.

¶ 3    Four months later Wilson's parents brought a wrongful death claim against the driver. The parties agreed to settle the case. The Wilsons agreed to dismiss their claims against the driver in exchange for payment of his insurance policy limits ($100,000).

¶ 4    Before the settlement became final, EMIA brought a separate subrogation suit in its own name against the driver for the medical expenses it paid on the decedent's behalf. Recognizing the competing claims in the two cases, all parties agreed to consolidate them. The driver's insurer subsequently interpleaded the $100,000 policy limits. But EMIA and the Wilsons disputed how to allocate the funds.

¶ 5    Following a hearing on that issue, the district court awarded $24,182.31 of the interpleaded funds to EMIA and the remaining $75,817.69 to the Wilsons. Both parties appealed the allocation. The Wilsons claimed that EMIA was not entitled to any of the interpleaded funds. EMIA countered that it was entitled to a full reimbursement of the coverage it provided for the decedent.

¶ 6    The court of appeals dismissed EMIA's case on standing grounds. It found no basis in the Utah code or in our case law for an "independent right . . . for an insurer to seek subrogated damages in its own name." *Wilson v. Educators Mut. Ins. Ass'n*, 2016 UT App 38, ¶ 8, 368 P.3d 471. First, it noted that Utah Code section 31A-21-108 provides only that "[s]ubrogation actions may be brought by the insurer in the name of its insured." *Id.* Second, it cited our decision in *Johanson v. Cudahy Packing Co.*, 152 P.2d 98 (Utah 1944), for the proposition that "'it has been generally held that a suit at law to enforce [a] right of subrogation must, at common law, be brought in the name of the

insured, rather than by the insurance company in its own name and right.'" 2016 UT App 38, ¶ 10 (quoting *Johanson*, 152 P.2d at 104)).

¶ 7 We agreed to hear the case on EMIA's petition for writ of certiorari. And we review the court of appeals' decision *de novo*. *State v. Ramirez*, 2012 UT 59, ¶ 7, 289 P.3d 444.

## II

¶ 8 The parties have briefed a range of issues addressed to the two principal grounds for the court of appeals' decision. They offer differing views of the inference to be drawn from Utah Code section 31A-21-108, and opposing constructions of our opinion in *Johanson*. They also disagree about the scope and applicability of the "made-whole" doctrine—a principle at least sometimes requiring an insurer to make an insured "whole" before asserting a right of subrogation against a third party, and thus protecting against claim-splitting. *See Johanson*, 152 P.2d at 104; *Nat'l Union Fire Ins. Co. v. Denver & R.G.R. Co.*, 137 P. 653, 656 (Utah 1913).

¶ 9 EMIA also advances an alternative basis for its standing to sue for subrogation in its own name: the express terms of its insurance policy. In EMIA's view the terms of the policy obviate many of the other issues presented in the case. EMIA notes that the policy recognizes an express right of subrogation regardless of whether the insured "is made whole by any recovery." And it accordingly asserts that it has standing to sue for subrogation as a matter of contract—and separate and apart from the existence of a right of equitable subrogation under our case law.

¶ 10 We agree and reverse on that basis. First we clarify the relationship between a right of subrogation set forth expressly in the terms of a contract and a right of "equitable subrogation." Then we explain the basis for our decision that EMIA has standing to assert a subrogation claim under the express terms of the insurance policy in question.

### A. Equitable Subrogation

¶ 11 Equitable subrogation is a creature of the common law. The case law in this field identifies circumstances in which we deem it fair or equitable to "allow[] a person or entity [that] pays the loss or satisfies the claim of another under a legally cognizable obligation or interest to step into the shoes of the other person and assert that person's rights."

*State Farm Mut. Auto. Ins. Co. v. Nw. Nat'l Ins. Co.*, 912 P.2d 983, 985 (Utah 1996) (citation omitted).

¶ 12 The law of equitable subrogation has long been extended to the field of insurance. Our cases recognize the right of an insurer to step into its insured's shoes and assert the insured's rights when the insurer satisfies a claim on the insured's behalf. *See Bd. of Ed. of Jordan Sch. Dist. v. Hales*, 566 P.2d 1246, 1247 (Utah 1977). A common application of that principle of equitable subrogation is in the circumstance at issue here. When an insurer pays medical expenses arising from an accident covered by an insurance policy the insurer may seek recovery of those expenses from a third-party tortfeasor—by stepping into the covered person's shoes and asserting a claim against the tortfeasor. *See Educators Mut. Ins. Ass'n v. Allied Prop. & Cas. Ins. Co.*, 890 P.2d 1029, 1031 (Utah 1995). In Utah that principle is also reaffirmed by statute—in Utah Code section 31A-21-108, which states that "[s]ubrogation actions may be brought by the insurer in the name of its insured."

¶ 13 The law of equitable subrogation places limits or conditions on the insurer's right of subrogation. One of those conditions is the "made-whole" principle, which states that an insurer is at least sometimes required to fully compensate its insured for any losses before it asserts a claim for subrogation. *Hill v. State Farm Mut. Auto. Ins. Co.*, 765 P.2d 864, 866 (Utah 1988), *overruled on other grounds by Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127 (Utah 1997). That principle is aimed at advancing a number of policies, including the goal of avoiding "claim-splitting." *See Johanson*, 152 P.2d at 103–04.

## B. Subrogation by the Express Terms of a Contract

¶ 14 The Wilsons cite the above principles in support of the dismissal of EMIA's subrogation claim on standing grounds. They find a negative implication in Utah Code section 31A-21-108—a notion that subrogation actions may be brought *only* in the name of an insured. And they claim that EMIA's subrogation action runs afoul of the "made-whole" doctrine in light of their allegation that they have not yet been compensated fully for their losses. Lastly, the Wilsons, like the court of appeals, contend that the *Johanson* case forecloses EMIA's subrogation action in the dictum that "'it has been generally held that a suit at law to enforce [a] right of subrogation must, at common law, be brought in the name of the insured, rather than by the insurance company in its own name and right.'" *Johanson*, 152 P.2d at 104.

¶ 15 The Wilsons' statutory argument overreads section 31A-21-108. This provision, in context, reinforces a general principle of

equitable subrogation. It states that "[s]ubrogation actions may be brought by the insurer in the name of its insured." UTAH CODE § 31A-21-108. That statement is significant because it reverses the general presumption that a person or entity has a right to sue only in its own name. *Shelledy v. Lore*, 836 P.2d 786, 789 (Utah 1992) ("The general rule is that a litigant 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))). Yet the converse point would not be necessary. We don't need a statute to tell us that an insurance company has a right to sue in its own name. And such a right, if it exists as a matter of the law of subrogation, should not be deemed eliminated by the recognition of a right of the insurer to sue in the name of the insured.

¶ 16 The court of appeals accepted this reading for the sake of argument. It assumed "that the statute's use of the permissive 'may' allows for the possibility that bringing an action in the name of the insured is not the exclusive manner for an insurer to pursue a subrogation claim." *Wilson v. Educators Mut. Ins. Ass'n*, 2016 UT App 38, ¶ 8, 368 P.3d 471. But it then stated that "there must be some legal basis" for an "insurer to bring the action in its own name" and ultimately concluded that "no independent right exists" in the law of equitable subrogation. *Id*. This holding was rooted in our case law—in the above-cited notion that "'it has been generally held that a suit at law to enforce [a] right of subrogation must, at common law, be brought in the name of the insured,'" "with the possible exception of an insurer who has fully indemnified the insured for all damages for which the wrongdoer could be held liable." 2016 UT App 38, ¶¶ 8, 10 (quoting *Johanson*, 152 P.2d at 104).

¶ 17 This overreads our opinion in the *Johanson* case. The quoted language, at most, is dicta describing common law standards in other states. *See Johanson*, 152 P.2d at 104 (quoting A.L.R. annotation referring to case law in twenty-four other jurisdictions). Our *Johanson* opinion did not establish a legal prohibition against an insurer filing a subrogation action in its own name. The right at issue in *Johanson* was the right of the insured's dependents to bring a claim against the tortfeasor after the insurance company refused to bring its claim. *See id*. ("When the insurance carrier declined to bring its action and executed a waiver thereof, the dependents were not compelled to forego suit. They have an interest in the recovery and can bring suit to enforce it."). So

we were in no position in that case to establish a legal prohibition of the sort embraced by the court of appeals.

¶ 18   In *Johanson* and elsewhere, our cases do make reference to the "made-whole" principle—and the related rule against claim-splitting. *See id.*; *Hill*, 765 P.2d at 866; *State Farm Mut. Auto. Ins. Co. v. Green*, 2003 UT 48, ¶ 34, 89 P.3d 97. As the court of appeals indicated, we have long referred generally to a defendant's common-law right not to "be sued twice for the same wrong." *Johanson*, 152 P.2d at 104. But the court of appeals' application of these principles here misses the important distinction between an equitable right of subrogation *established by case law* and a private right of subrogation *established by contract*. The made-whole principle—and the claim-splitting corollary—arise as a matter of our common law of equitable subrogation. Yet we have long held that these principles "can be modified by contract." *Hill*, 765 P.2d at 866.

### C. EMIA's Standing to Sue in its Own Name

¶ 19   An insurer and an insured may agree to contract away the requirements of the common law of equitable subrogation. They may provide in an insurance policy that the insured need not be made whole before the insurer may sue for subrogation, or in other words that the claim may be split by a subrogation claim being asserted before the insured is fully compensated. And that is precisely what the policy in question here provided. It recognized EMIA's authority "to pursue its own right of Subrogation against a third party" without regard to whether the insured "is made whole by any recovery." It is difficult to imagine a clearer statement of EMIA's authority to sue for subrogation in its own name and without regard to full "make-whole" compensation for the Wilsons.

¶ 20   We are not unsympathetic of the Wilsons' concerns about the inefficiencies of claim-splitting. But EMIA reserved the right to sue for subrogation in its own name, even in a circumstance in which the Wilsons have not been made whole. And that right preserved the prospect of separate suits against the tortfeasor (the driver of the car that killed the Wilsons' daughter).

¶ 21   Yet the Wilsons (and the driver) are not without recourse for this inefficiency. Our rules of procedure embrace principles of joinder and consolidation. *See* UTAH R. CIV. P. 19, 20, & 42. So if the driver had been subject to two separate suits—one by EMIA and one by the Wilsons—then the answer to the claim-splitting problem presumably would have been the consolidation of the two cases under rule 42. And that is effectively what has happened here. EMIA was not formally

joined in the initial action by the Wilsons against the driver; instead it filed a separate suit. But the two cases were consolidated, so the typical downsides of claim-splitting are simply not presented here.

### III

¶ 22   We uphold EMIA's standing to sue for subrogation in its own name under the terms of the insurance policy. In so doing we do not reach other matters briefed but not decided by the court of appeals, such as whether EMIA's claim is somehow barred by Utah Code section 78B-3-107, and whether the district court erred in its allocation of the interpleaded funds.

¶ 23   And we remand the case to the court of appeals for further proceedings consistent with this opinion. In so doing we leave it to the parties and the court of appeals to identify any issues that remain for decision after our resolution of the matters presented for our review.

———————