2014 UT App 139

**Barbara WACHOCKI and Rest Easy Adult Day Care, Inc., Plaintiffs and Appellees,**

v.

**Laurel M. LUNA; Veronica Grajeda; Kindred Keepers Adult Day Center, LLC; and Kindred Keepers at Home Services, LLC, Defendants and Appellants.**

No. 20111121–CA.

Court of Appeals of Utah.

June 19, 2014.

Randall Lee Marshall, for Appellants.

Richard H. Reeve and William A. Street, for Appellees.

Judge JOHN A. PEARCE authored this Memorandum Decision, in which Judge J. FREDERIC VOROS JR. concurred. Judge JAMES Z. DAVIS concurred in the result.

Memorandum Decision

PEARCE, Judge:

¶1 Laurel M. Luna; Veronica Grajeda; Kindred Keepers Adult Day Center, LLC; and Kindred Keepers At Home Services, LLC appeal the default judgment entered below in favor of Barbara Wachocki and Rest Easy Adult Day Care, Inc. (Rest Easy). We affirm in part, vacate in part, and remand this matter to the district court for further proceedings consistent with this memorandum decision.

¶2 In 1999, Wachocki and Luna founded Rest Easy, an adult day care facility. They each owned 50% of the corporation and were Rest Easy's only shareholders throughout its existence. Wachocki provided the majority of the initial capital, developed Rest Easy's policies and procedure manual, and handled licensing issues. Luna managed the day-to-day operations of the business, served as the corporation's bookkeeper, and oversaw billing and other financial issues. In 2002, Rest Easy also began offering in-home personal

care services to its clients under the name Rest Easy Personal Care Services. Grajeda began working for Rest Easy in 2003 and eventually became the manager of Rest Easy Personal Care Services.

¶ 3 Sometime prior to the fall of 2007, Luna and Grajeda offered to purchase Wachocki's interest in Rest Easy.[1] After Wachocki rejected their offer, Luna and Grajeda prepared to start a venture that would compete with Rest Easy. In May 2008, Luna and Grajeda formed Kindred Keepers and filed articles of organization listing them as Kindred Keepers' members and managers.[2]

¶ 4 Also in May 2008, and while Wachocki was away on vacation, Luna informed Wachocki that Rest Easy was ready to undergo and pass a state inspection that was necessary for Rest Easy to maintain its license and stay in business. Unbeknownst to Wachocki, Luna cancelled the inspection. Luna and Grajeda then used Wachocki's absence as an opportunity to relocate Rest Easy's files and employees to offices Kindred Keepers had leased. Luna and Grajeda also moved Rest Easy's office supplies, furniture, and equipment to Kindred Keepers' offices.

¶ 5 Kindred Keepers began performing services for Rest Easy's former clients, who were informed that they were now Kindred Keepers' clients. Kindred Keepers billed Medicaid using Rest Easy's Medicaid provider number but diverted the Medicaid funds Rest Easy received to Kindred Keepers to pay Kindred Keepers' employees (who had, until very recently, been Rest Easy's employees).

¶ 6 Wachocki and Rest Easy filed an action against Luna, Grajeda, and Kindred Keepers (collectively, Appellants), alleging that they had sabotaged Rest Easy and stolen its business. Appellants failed to answer the complaint. The district court entered a default judgment after conducting a two-day bench trial to determine what damages should be awarded based on the complaint's allegations.

The district court ultimately awarded Wachocki and Rest Easy $230,000 in compensatory damages, which included past and future lost profits, consequential damages, disgorgement of funds, and the amount due on an unpaid personal loan Wachocki made to Luna. The district court also awarded $128,000 in punitive damages. The court awarded the entire amount of $358,000 against all Appellants. Appellants raise multiple challenges to the damages awarded below.

¶ 7 "When a defendant fails to appear and answer a complaint, the entry of a default does not automatically entitle a plaintiff to a default judgment for the damages claimed in the complaint." *Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1076 (Utah 1998). If the damages the complaint seeks are not liquidated damages, the court must review the complaint, "determine whether the allegations state a valid claim for relief, and award damages in an amount that is supported by some valid evidence." *Id.* Although the complaint's factual allegations are deemed admitted, a plaintiff's legal allegations do not bind the district court and the court should enter a default judgment only if the pleaded facts will support a valid legal claim. *Id.*

¶ 8 Accordingly, on "appeal from a default judgment, a defendant may contest the sufficiency of the complaint and its allegations to support the judgment." *Id.* (citation and internal quotation marks omitted). We review the district court's assessment of the legal sufficiency of a complaint for correctness. *Franco v. Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 10, 21 P.3d 198. We review the amount of any unliquidated damages awarded after default judgment to ensure that the award "is supported by some valid evidence." *Skanchy*, 952 P.2d at 1076.

¶ 9 Appellants first argue that Wachocki and Rest Easy's claim for breach of the duty

---

1. Because of the default below, we accept the allegations in Wachocki's complaint as true. *See Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1076 (Utah 1998) (stating that, upon default, the plaintiff's "factual allegations are deemed admitted").

2. We refer to Kindred Keepers Adult Day Center, LLC and Kindred Keepers At Home Services, LLC collectively as Kindred Keepers.

of care against Luna must fail because a corporate director can be liable to the corporation or its shareholders only if her "breach or failure to perform constitutes gross negligence, willful misconduct, or intentional infliction of harm on the corporation or the shareholders." Utah Code Ann. § 16–10a–840(4) (LexisNexis 2013). Appellants argue that the complaint failed to allege that Luna's mismanagement constituted gross negligence or willful or intentional misconduct and that damages attributable to her mismanagement of Rest Easy are therefore improper.[3]

¶ 10 Although the complaint may not have used the terms "gross negligence," "willful misconduct," or "intentional infliction of harm," it did allege a pattern of behavior by Luna that demonstrated utter indifference to the fate of Rest Easy at best and a concerted effort to destroy the business at worst.[4] For example, the complaint alleged that Luna formed Kindred Keepers to directly compete with Rest Easy, surreptitiously cancelled a state inspection needed to maintain Rest Easy's business license, improperly hired away Rest Easy's employees, and "continuously withdrew and/or received Rest Easy's funds for [her] own benefit." In light of the overall pattern of behavior alleged in the complaint, we see no error in the district court's award of damages for Luna's breach of the duty of care, notwithstanding the complaint's failure to expressly use the terms Utah Code section 16–10a–840(4) employs.

¶ 11 Appellants next argue that Wachocki and Rest Easy's claims of breach of the duty of loyalty and intentional interference with economic relations are business torts, for which damages should have been limited to Rest Easy's lost profits. Even if we assume that Appellants are correct that these claims are properly characterized as "business torts" in this context, Appellants take an unduly narrow view of the available damages.[5] We have previously stated that the appropriate measure of damages for a business tort is the "pecuniary loss" caused by the tortious behavior "as measured by lost net profits *or any other consequential losses.*" *Stevensen 3rd E., LC v. Watts*, 2009 UT App 137, ¶ 38, 210 P.3d 977 (emphasis added). Appellants make no effort to identify any portion of the judgment that could not be characterized as "other consequential losses" resulting from the actions alleged in the complaint.[6]

¶ 12 Appellants next argue that, as a "mere employee," Grajeda owed no duty of loyalty to refrain from competing with Rest Easy. Appellants correctly note that the

3. Appellants also appear to argue that the damages awarded for Luna's breach of the duty of care consist of tax liabilities that should be shouldered equally by both Luna and Wachocki. However, the district court's order awarded "lost profits and future lost profits and consequential damages" on the breach of duty claim. Appellants do not specify what portion of that award represents the tax liability that they claim was improperly awarded. Moreover, Appellants seem to suggest, but do not expressly argue, that the complaint's factual allegations do not specifically support the damages awarded for Luna's breach of the duty of care. To the extent that Appellants intended to make this argument, it is not adequately developed and thus insufficient to discharge Appellants' burden of demonstrating trial court error. *See* Utah R.App. P. 24(a)(9) (requiring appellate arguments to "contain the contentions and reasons of the appellant with respect to the issues presented ... with citations to the authorities, statutes, and parts of the record relied on").

4. Utter indifference is one of the hallmarks of gross negligence. *See Blaisdell v. Dentrix Dental*

*Sys., Inc.*, 2012 UT 37, ¶ 14, 284 P.3d 616 ("Gross negligence is the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result." (citation and internal quotation marks omitted)).

5. Appellants provide no authority for their assertion that both breach of the duty of loyalty and intentional interference with economic relations are business torts. However, we accept their characterization for purposes of our analysis.

6. Elsewhere in their brief, Appellants claim that the consequential damages award was "grossly miscalculated" and attack the award of certain items of consequential damages. However, Appellants make no attempt to marshal the evidence presented at the two-day trial on damages. In light of that failure, Appellants have not carried their burden of persuasion on appeal. *See State v. Nielsen*, 2014 UT 10, ¶ 42, 326 P.3d 645 ("[A] party challenging a factual finding or sufficiency of the evidence to support a verdict will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal.").

Utah Supreme Court has explicitly left open the question of whether every "mere employee" owes a duty of loyalty to not compete with her employer. *See Prince, Yeates & Geldzahler v. Young*, 2004 UT 26, ¶ 22 n. 2, 94 P.3d 179 ("We need not, and do not, decide today whether all 'mere employees' owe fiduciary duties to their employers to not compete with the employer's legitimate business interests.").[7]

¶ 13 However, acknowledging the existence of this question is not the same as adequately articulating an argument that would allow us to address it. Appellants present no authority or analysis aimed at convincing this court that an employee who engages in the egregious behavior alleged in this case does not violate a duty of loyalty owed to her employer. Wachocki and Rest Easy have similarly failed to brief any helpful argument, limiting their analysis to the incorrect assertion that the supreme court actually recognized such a duty in *Prince, Yeates & Geldzahler v. Young*, 2004 UT 26, 94 P.3d 179.

■■■■ ¶ 14 Although neither party has provided us with any helpful analysis on the duty of loyalty issue, it is ultimately Appellants who have abdicated their burden of persuasion on appeal. *See Salt Lake Cnty. v. Butler, Crockett & Walsh Dev. Corp.*, 2013 UT App 30, ¶ 37 n. 5, 297 P.3d 38 (holding that the appellant "has not met its burden of persuasion on appeal by adequately briefing a plausible claim"). "An appellate court is not a depository in which [a party] may dump the burden of argument and research." *Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903 (alteration in original) (citation and internal quotation marks omitted). Yet that is exactly what Appellants have done here—raised an issue in the apparent hope that this court will develop the arguments for and against and then decide the question based upon its own framing of the issue. Under these circumstances, we decline to address Appel-

lants' duty of loyalty argument because it is inadequately briefed, *see ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2013 UT 24, ¶ 16, 309 P.3d 201, and we affirm the district court's award of damages against Grajeda for breach of the duty of loyalty.

■■■■ ¶ 15 Appellants next argue that the lost profits damages awarded against them are based upon an expert's impermissible speculation. "Damages, to include lost profits, 'must be proven with reasonable certainty and the amount by a reasonable though not necessarily precise estimate.'" *Carlson Distrib. Co. v. Salt Lake Brewing Co.*, 2004 UT App 227, ¶ 19, 95 P.3d 1171 (quoting *Sawyers v. FMA Leasing Co.*, 722 P.2d 773, 774 (Utah 1986)). However, while the evidence of damages must not be so indefinite as to allow speculation as to their amount, "'some degree of uncertainty is tolerable.'" *Id.* (quoting *Acculog, Inc. v. Peterson*, 692 P.2d 728, 732 (Utah 1984)).

¶ 16 Here, Appellants assert that Wachocki and Rest Easy's expert "used charts and statistics to project what the profits of Rest Easy *should* have been" instead of extrapolating from the company's actual performance. They also complain that the expert improperly assumed that Luna's mismanagement of Rest Easy prior to 2008 rose to the level of malfeasance. Appellants have not argued here or below that this expert's testimony was inadmissable under the standards outlined in Utah Rule of Evidence 702. Nor do they cite any authority suggesting that the methodology the expert employed was unreliable. Similarly, Appellants baldly assert that the complaint lacks allegations that would permit the expert to assume that Luna engaged in acts of malfeasance prior to 2008. Appellants do not, however, support that assertion with any reference to the complaint or any explanation of why they believe the allegations pleaded do not support the expert's testimony. On this briefing, we cannot

---

7. Despite the supreme court's express disclaimer in *Prince, Yeates & Geldzahler v. Young*, 2004 UT 26, 94 P.3d 179, the district court used that case as its sole authority to conclude:

> All employees, even at-will employees, owe a duty of loyalty to their employer and must not, while employed, act contrary to the employer's interest, which necessarily includes a duty not

to compete with the employer's business interests. The correct measure of damages for an employee's breach of this duty is the disgorgement of money and benefits that the employee received from the employer during the period of competition and breach.

(Citation omitted.)

conclude that either of the alleged flaws caused the ultimate damages award to fall short of the reasonable estimate that the law requires. *See Carlson Distrib. Co.*, 2004 UT App 227, ¶ 19, 95 P.3d 1171.

 ¶ 17 Appellants also challenge the district court's decision to credit the testimony of Wachocki and Rest Easy's expert over that of Appellants' expert. "[I]t is the district court's province to determine the weight and credibility of expert testimony." *Strohm v. ClearOne Commc'ns, Inc.*, 2013 UT 21, ¶ 57 n. 13, 308 P.3d 424. The district court here expressly found that Wachocki and Rest Easy's expert was "most convincing and compelling," that his report was "excellent" and "well documented," and that the court was "not persuaded" by Appellants' expert. Nothing in Appellants' argument provides a basis for us to second-guess the district court's credibility determinations.

¶ 18 Appellants also argue that certain portions of the compensatory damages award should not have been assessed against Grajeda. Wachocki and Rest Easy have conceded that Grajeda should not have been assessed the damages identified in the district court's order as "Wachocki's Share of Rest Easy's Lost Profits" and "Balance of Unpaid Personal Loan Plus 10% Statutory Interest." We therefore vacate the district court's award of these damages against Grajeda.

 ¶ 19 However, as to the other compensatory damages awarded against Grajeda, we reject Appellants' argument that it is "patently unfair to assess the same damages against a mere employee who was doing what her boss told her to do as the damages assessed against Luna." Although Grajeda was an employee, she actively participated in the formation of Kindred Keepers and the subsequent destruction of Rest Easy's business. Grajeda is therefore properly liable for consequential losses resulting from her tortious behavior. *See Stevensen 3rd E., LC*

*v. Watts*, 2009 UT App 137, ¶ 38, 210 P.3d 977.

¶ 20 Finally, Appellants challenge the district court's award of punitive damages as excessive. Appellants argue that the district court erred by assessing punitive damages, in part, based on conduct that was merely negligent. Appellants further argue that the district court "did not really consider the financial wealth" of each defendant as required by *Crookston v. Fire Insurance Exchange*, 817 P.2d 789 (Utah 1991). We vacate the district court's award of punitive damages and remand that issue for reconsideration consistent with this memorandum decision.

¶ 21 Appellants argue that Utah law generally allows punitive damages to be awarded only for conduct that, at a minimum, "manifests a knowing and reckless indifference toward, and a disregard of, the rights of others." Utah Code Ann. § 78B–8–201(1)(a) (LexisNexis 2012). Appellants concede that some of their conduct satisfies the statutory standard, but they argue that other conduct—such as Luna's failure to repay the loan from Wachocki—does not.

 ¶ 22 An award of punitive damages must be premised on conduct that satisfies the statutory requirement of knowing and reckless indifference toward, and a disregard of, the rights of others. For example, the Utah Supreme Court has explained that "[w]hile simple negligence will not support punitive damages, negligence manifesting a knowing and reckless indifference toward the rights of others will." *Diversified Holdings, LC v. Turner*, 2002 UT 129, ¶ 29, 63 P.3d 686. "A determination must be made on the facts of each case whether the negligence complained of is of the sort that will support punitive damages." *Id.*

 ¶ 23 Here, the district court calculated punitive damages by simply applying a fixed ratio to the total amount of compensatory damages.[8] In so doing, the district

---

**8.** The district court, in an order prepared by Wachocki, purported to award punitive damages based on the total amount of compensatory damages "at a ratio of approx. 2 to 1 pursuant to *Crookston*." We note that the district court actually applied a punitive to compensatory damages ratio of approximately 1 to 2. We also note that a 3 to 1 ratio is generally the appropriate ceiling for punitive damages. *See Diversified Holdings, LC v. Turner*, 2002 UT 129, ¶ 24, 63 P.3d 686 ("The ratio of punitive to compensatory damages does not, by itself, determine whether or not an

court failed to make the required findings that each portion of the total compensatory damage award resulted from conduct that met the culpability standard of Utah Code section 78B–8–201(1)(a). *See Diversified Holdings,* 2002 UT 129, ¶¶ 25–33, 63 P.3d 686. We therefore vacate the award of punitive damages and remand for recalculation. If the district court again elects to calculate punitive damages by applying a ratio to the amount of compensatory damages, the court may do so only to the extent that it makes findings that the conduct giving rise to the compensatory damages portion of the ratio satisfies the requirements of Utah Code section 78B–8–201(1)(a). The district court should also ensure that punitive damages are awarded against each of Appellants only for conduct that each one committed.[9]

¶ 24 Appellants also complain that the district court failed to properly consider their individual wealth as *Crookston* requires.[10] *See* 817 P.2d at 808. Specifically, Appellants argue that the district court ignored evidence that Luna and Grajeda both earned approximately $20,000 in 2010 and instead evaluated their wealth based on the fact that "Rest Easy grossed over $300,000.00 per year in 2004, 2006, and 2007 [and] it is difficult to understand where the money went each year."

¶ 25 There are two problems with the district court's approach. First, Rest Easy's gross receipts prior to Appellants' takeover are not a direct proxy for Luna's and Grajeda's individual wealth, and the district court erred to the extent that it treated them as such. Second, the district court has an obligation to assess the relative wealth of each defendant individually, as the award needed to deter one defendant from future misconduct may differ from that needed to deter another. Similarly, given the constitutional considerations of an excessive punitive damages award, *see Westgate Resorts, Ltd. v. Consumer Prot. Grp., LLC,* 2012 UT 55, ¶ 10, 285 P.3d 1219, an award that can be constitutionally imposed against one defendant may fail constitutional muster when imposed against another. On remand, the district court should reevaluate the relative wealth of each defendant individually.

¶ 26 We vacate portions of the compensatory damages award against Grajeda pursuant to Wachocki and Rest Easy's concessions on appeal. Specifically, we vacate the award of damages against Grajeda for the past lost profits damages and for the personal loan from Wachocki to Luna. We also vacate the punitive damages award because the district court based that award on the compensatory damages without finding that the compensatory damages were based upon conduct that satisfies Utah Code section 78B–8–201(1)(a) and because the district court failed to properly assess the individual wealth of each defendant. We otherwise affirm the judgment, and we remand this matter to the district court for further proceedings consistent with this memorandum decision.

---

award is excessive; an award that falls outside certain parameters will, however, elicit more searching judicial scrutiny. For punitive awards of less than $100,000 a ratio of three to one will generally be justifiable, but for awards greater than $100,000, a somewhat lower ratio is usually appropriate." (citation omitted)).

9. For example, even if the court were to find that Luna's failure to repay her personal loan from Wachocki satisfies Utah Code section 78B–8–201(1)(a), Luna's failure should not be used to calculate punitive damages against Grajeda or Kindred Keepers.

10. *Crookston v. Fire Insurance Exchange,* 817 P.2d 789 (Utah 1991), identified seven factors that must be considered in awarding punitive damages:

> (i) the relative wealth of the defendant; (ii) the nature of the alleged misconduct; (iii) the facts and circumstances surrounding such conduct; (iv) the effect thereof on the lives of the plaintiff and others; (v) the probability of future recurrence of the misconduct; (vi) the relationship of the parties; and (vii) the amount of actual damages awarded.

*Id.* at 808. The Utah Supreme Court subsequently clarified that the "'harm to others' [factor] may only be used to assess reprehensibility, but may not be used to directly punish a defendant for harm caused to nonparties." *Westgate Resorts, Ltd. v. Consumer Prot. Grp., LLC,* 2012 UT 55, ¶ 14, 285 P.3d 1219.