**2018 UT App 155**

## THE UTAH COURT OF APPEALS

EVERETT P. WILSON JR. AND DARLA WILSON,
Appellants,
*v.*
EDUCATORS MUTUAL INSURANCE ASSOCIATION,
Appellee.

Opinion
No. 20150150-CA
Filed August 16, 2018

Fourth District Court, Provo Department
The Honorable Samuel D. McVey
No. 110400083

Jack C. Helgesen and Craig Helgesen, Attorneys
for Appellants

Randall R. Smart and Jeffrey A. Callister, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER[1] authored this
Opinion, in which JUDGES GREGORY K. ORME and KATE A.
TOOMEY concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     This case is before us on remand from the Utah Supreme
Court. *See generally Wilson v. Educators Mutual Insurance Ass'n*
(*Wilson II*), 2017 UT 69, 416 P.3d 355, *rev'g Wilson v. Educators
Mutual Insurance Ass'n* (*Wilson I*), 2016 UT App 38, 368 P.3d 471.
In *Wilson II*, our supreme court reversed this court's
determination in *Wilson I* that Educators Mutual Insurance
Association (EMIA) lacked standing to pursue a subrogation

_____

1. Due to a change in marital status, the authoring judge is now
known as Judge Michele M. Christiansen Forster.

action against the tortfeasor in its own name, concluding that EMIA had standing to sue for subrogation in its own name under the terms of the insurance policy in question. *Id.* ¶ 22. On remand, we are instructed to address the parties' remaining contentions. *Id.* ¶¶ 22–23.

¶2 Appellants Everett P. Wilson Jr. and Darla Wilson contend that EMIA's claim was barred by Utah Code section 78B-3-107 and that the district court erred in its allocation of interpleaded funds. Regarding their first contention, the Wilsons have failed to provide any meaningful analysis and have therefore failed to meet their burden of persuasion on appeal. *See Bank of Am. v. Adamson*, 2017 UT 2, ¶¶ 12–13, 391 P.3d 196. As to the Wilsons' second contention, we conclude that the district court did not abuse its discretion in equitably dividing the interpleaded funds between the Wilsons and EMIA. We therefore affirm the district court's order allocating the interpleaded funds.

BACKGROUND

¶3 This case began in September 2010 with the tragic death of Jessica Wilson, who was struck by a car while walking in a crosswalk. Jessica died at the hospital a few hours later. Jessica's insurance provider, EMIA, covered $78,692.34 of her medical expenses.

¶4 In 2011, Jessica's parents, the Wilsons, filed a wrongful death claim against the driver of the car that struck Jessica, seeking funeral expenses and compensation for the loss of Jessica's companionship, love, and affection. In 2013, the Wilsons reached a tentative settlement with the driver's insurer for the $100,000 limit of his liability insurance policy.

¶5 In January 2014, EMIA filed a "Complaint for Subrogation Claim" against the driver, seeking reimbursement for the

$78,692.34 in medical expenses it had paid out on Jessica's behalf, with accrued interest.[2] EMIA asserted its subrogation claim under the terms of its insurance policy with Jessica. The driver filed a motion to dismiss, asserting that EMIA lacked standing to bring suit in its own name. The district court denied the driver's motion, observing that (1) Utah Code sections 78B-2-105, 78B-3-106, and 78B-3-107 did not apply; (2) Utah Code section 31A-21-108 applied and allowed an insurer to bring "an action to subrogate in either its name or the name of its insured"; and (3) pursuant to EMIA's insurance policy with Jessica, EMIA "was entitled to recovery against a third-party tortfeasor." Consequently, the court determined that EMIA had standing to file its lawsuit.

¶6 Eventually, the parties agreed to consolidate the cases against the driver, and the driver filed an interpleader counterclaim[3] against EMIA and the Wilsons, in which his

---

2. "The doctrine of subrogation allows an insurer, having paid a loss resulting from a peril insured against, to step into the shoes of its insured and recoup its losses from a tort-feasor whose negligence caused the loss." *Birch v. Fire Ins. Exch.*, 2005 UT App 395, ¶ 7, 122 P.3d 696 (quotation simplified).

3. An interpleader is an action in which a person deposits money or property claimed by others with the court so that the court can determine the respective ownership rights of the claimants. *See Interpleader*, Black's Law Dictionary (10th ed. 2014); *see also Terry's Sales, Inc. v. Vander Veur*, 618 P.2d 29, 31 (Utah 1980) (explaining that interpleader is an action "in which a person who has possession of money or property which may be owned or claimed by others seeks to rid himself of risk of liability, or possible multiple liability, by disclaiming his interest and submitting the matter of ownership for adjudication by the court").

insurer agreed to interplead with the court the $100,000 policy limit. EMIA and the Wilsons agreed to accept the $100,000 in settlement of their claims against the driver and to dismiss him from the lawsuit with prejudice, but they disagreed on how to allocate the funds.

¶7    After a hearing on the matter, the district court concluded that it was "equitable to divide the $100,000.00 equally between the parties, specifically, $50,000.00 to the Wilsons and $50,000.00 to EMIA." However, in recognition of the fact that the Wilsons had "labored more than EMIA to acquire the $100,000.00 that was deposited with [the] Court by [the driver]," the court determined that it was "equitable to reimburse the Wilsons for one half of their attorneys' fees and costs from EMIA's portion"—$16,667 in attorney fees and $9,150.69 in costs. Accordingly, the court awarded $75,817.69 of the interpleaded funds to the Wilsons and $24,182.31 to EMIA. The Wilsons appealed.

¶8    In *Wilson I*, this court determined that Utah Code section 31A-21-108[4] "contains no language *granting* an insurance company the right to bring a subrogation action in its own name." 2016 UT App 38, ¶ 8, 368 P.3d 471. We also observed that "'it has been generally held that a suit at law to enforce [a] right of subrogation must, at common law, be brought in the name of the insured, rather than by the insurance company in its own name and right.'" *Id.* ¶ 10 (alteration in original) (quoting *Johanson v. Cudahy Packing Co.*, 152 P.2d 98, 104 (Utah 1944)). Thus, we concluded that "EMIA lacked standing to bring a subrogation action [against the driver] in its own name rather than in the name of Jessica or Jessica's estate." *Id.* ¶ 7. Therefore,

---

4. "Subrogation actions may be brought by the insurer in the name of its insured." Utah Code Ann. § 31A-21-108 (LexisNexis 2017).

we further concluded that the district court erred in dividing the interpleaded funds between the Wilsons and EMIA, and we "reverse[d] the [district] court's order and remand[ed] with instructions for the [district] court to dismiss EMIA's claims and award all of the interpleaded funds to the Wilsons." *Id.* ¶ 13. Given our determination that EMIA lacked standing, we declined to address the Wilsons' other arguments. *Id.* ¶ 7. EMIA petitioned our supreme court for certiorari, which was granted. *See Wilson II*, 2017 UT 69, ¶ 7, 416 P.3d 355.

¶9 The supreme court reversed, concluding that EMIA had standing to sue for subrogation in its own name pursuant to the express terms of its insurance policy with Jessica Wilson. *Id.* ¶¶ 9–10, 19. First, the court discussed the law of equitable subrogation and observed that "[t]he law of equitable subrogation places limits or conditions on the insurer's right of subrogation." *Id.* ¶¶ 11–13. "One of those conditions is the 'made-whole' principle, which states that an insurer is at least sometimes required to fully compensate its insured for any losses before it asserts a claim for subrogation." *Id.* ¶ 13. The court then discussed subrogation by the express terms of a contract and explained that "[a]n insurer and an insured may agree to contract away the requirements of the common law of equitable subrogation. They may provide in an insurance policy that the insured need not be made whole before the insurer may sue for subrogation . . . ." *Id.* ¶¶ 18–19. With regard to the made-whole principle, the court explained that the principle "arise[s] as a matter of our common law of equitable subrogation" and that it "can be modified by contract." *Id.* ¶ 18 (quotation simplified). Observing that EMIA's insurance policy with Jessica "recognized EMIA's authority 'to pursue its own right of Subrogation against a third party' without regard to whether the insured 'is made whole by any recovery,'" the court stated that "[i]t is difficult to imagine a clearer statement of EMIA's authority to sue for subrogation in its own name and without regard to full 'make-whole' compensation for the Wilsons." *Id.*

¶ 19. Consequently, the supreme court upheld EMIA's standing to sue for subrogation in its own name. *Id.* ¶ 22. The court remanded the case to this court with instructions to identify and address any issues that remained for decision after *Wilson II*. *Id.* ¶ 23.

¶10    On remand from the supreme court, we asked the parties to submit supplemental briefing advising this court as to which, if any, of the issues raised in the original briefing in *Wilson I* remained outstanding and needed resolution. The Wilsons identified two remaining issues: (1) whether EMIA's claim was barred by Utah Code section 78B-3-107, and (2) whether the district court erred in its allocation of the interpleaded funds.[5]

## ANALYSIS

¶11    The Wilsons first contend that EMIA's claim was barred by Utah's survival action statute, Utah Code section 78B-3-107.[6]

---

5. Aside from brief references to this court's decision in *Wilson I*, the Wilsons' supplemental briefing on the two identified issues is almost identical to its original briefing on the same issues in *Wilson I*.

6. Utah Code section 78B-3-107 provides,

> A cause of action arising out of personal injury to a person, or death caused by the wrongful act or negligence of a wrongdoer, does not abate upon the death of the wrongdoer or the injured person. The injured person, or the personal representatives or heirs of the person who died, has a cause of action against the wrongdoer or the personal representatives of the wrongdoer for special and general damages . . . .

Utah Code Ann. § 78B-3-107(1)(a) (LexisNexis Supp. 2017).

More specifically, they assert that section 78B-3-107 "expressly gives the cause of action for a pre-death injury (all special and general damages suffered) to 'the personal representatives or heirs of the person who died'" and that "[p]re-death medical expenses are part of an injury claim." Thus, although they do not explicitly state as much, the Wilsons appear to be arguing that EMIA could not seek reimbursement for the medical expenses it paid out on Jessica's behalf as part of its subrogation claim. We decline to address the merits of this contention because it is inadequately briefed.

¶12    An appellant's brief "must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8). "An appellant who fails to adequately brief an issue will almost certainly fail to carry its burden of persuasion on appeal." *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 12, 391 P.3d 196 (quotation simplified). An appellant "must cite the legal authority on which its argument is based and then provide reasoned analysis of how that authority should apply in the particular case, including citations to the record where appropriate." *Id.* ¶ 13; *see also Hess v. Canberra Dev. Co.*, 2011 UT 22, ¶ 25, 254 P.3d 161 (observing that "a party's brief must contain meaningful legal analysis"; that "a brief must go beyond providing conclusory statements and fully identify, analyze, and cite its legal arguments"; and that "meaningful analysis requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority" (quotations simplified)).

¶13    Here, the Wilsons' argument is devoid of any meaningful analysis. *See Hess*, 2011 UT 22, ¶ 25. First, the Wilsons quote a paragraph from this court's decision in *Wilson I*, wherein we referred to EMIA's action as a personal injury action and stated that EMIA should have brought the action "in the name of the estate or intervened in the Wilsons' action against [the driver]"

instead of in its own name. *See* 2016 UT App 38, ¶ 12, 368 P.3d 471. However, the Wilsons have failed to provide any analysis of that paragraph or, more importantly, to explain how it supports their argument in light of our supreme court's conclusion in *Wilson II* that EMIA could file a subrogation action in its own name based on the express terms of its insurance policy with Jessica. *See* 2017 UT 69, ¶ 22, 416 P.3d 355. Indeed, we are inclined to agree with EMIA that the Wilsons' argument is merely an "attempt to categorize EMIA's cause of action as one for personal injury" instead of as a subrogation action. Next, the Wilsons simply quote Utah Code section 78B-3-107, providing no analysis. And lastly, they assert, without providing any pinpoint citations, that *Morrison v. Perry*, 140 P.2d 772 (Utah 1943), stands for the proposition that "[p]re-death medical expenses are part of an injury claim."

¶14   That is the extent of the Wilsons' analysis, and it is inadequate. As we have stated many times, "an appellate court is not a depository in which a party may dump the burden of argument and research." *See, e.g.*, *Wachocki v. Luna*, 2014 UT App 139, ¶ 14, 330 P.3d 717 (quotation simplified); *see also State v. Davie*, 2011 UT App 380, ¶ 16, 264 P.3d 770 ("An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." (quotation simplified)). The Wilsons have offered only bald citation to authority and conclusory statements without any meaningful analysis—they have failed to explain why, given the supreme court's opinion, EMIA could not seek reimbursement of the medical expenses it paid out on Jessica's behalf in its subrogation action. Consequently, they have failed to carry their burden of persuasion on appeal.

¶15   The Wilsons next contend that the district court erred in its allocation of the interpleaded funds. "An action in interpleader is a proceeding in equity in which a person who has possession of money or property which may be owned or

claimed by others seeks to rid himself of risk of liability, or possible multiple liability, by disclaiming his interest and submitting the matter of ownership for adjudication by the court." *Terry's Sales, Inc. v. Vander Veur*, 618 P.2d 29, 31 (Utah 1980). "When a district court fashions an equitable remedy, we review it to determine whether the district court abused its discretion." *Collard v. Nagle Constr., Inc.*, 2006 UT 72, ¶ 13, 149 P.3d 348. "This standard recognizes the district court's unique ability to balance facts and craft equitable remedies and our corresponding hesitance to act as a Monday morning quarterback in such matters." *Id.* (quotation simplified).

¶16　Here, the district court found that the Wilsons suffered damages for the loss of the love and affection of their daughter, as well as funeral expenses, which amount exceeded the $100,000.00 deposited with the court. The court also found that EMIA disbursed a substantial amount[7] for Jessica's medical expenses. The court then noted that the $100,000 interpleaded by the driver was "insufficient to satisfy the damages claimed by the Wilsons and EMIA." The court further found that the Wilsons had been in litigation with the driver for a longer period of time than EMIA and that the Wilsons had "labored more than EMIA to acquire the $100,000.00 that was deposited with [the] Court by [the driver]." Lastly, the court found that both parties had incurred attorney fees and costs, and the Wilsons

---

7. The district court's order states, "The amount of damages claimed by EMIA for the medical expenses paid [on] behalf of Jessica Wilson also exceed[s] $100,000.00." The amount EMIA sought to recoup for medical expenses in its subrogation action, however, was $78,692.34. *See supra* ¶ 5. We also note that, in briefing the issue of allocation in the district court, the parties did not dispute that $78,692.34 represented the full amount EMIA paid in medical expenses for Jessica.

specifically had paid $33,334 in attorney fees and $18,301.38 in litigation costs.

¶17    The district court then observed that "[i]nterpleader actions filed pursuant to Rule 22 of the Utah Rules of Civil Procedure are equitable in nature" and that, because the parties' claims to the $100,000 exceeded that amount, the court had to "balance the equities and determine how that amount should be allocated." Relying on its factual findings, the court stated that "[t]he equities that should be balanced in this matter are the Wilsons' loss of their daughter and EMIA's claim for reimbursement for the medical expenses it paid out [on] behalf of Jessica Wilson." The court determined that it was equitable to divide the $100,000 equally between the parties, that is, $50,000.00 to the Wilsons and $50,000.00 to EMIA. However, recognizing that the Wilsons' efforts to obtain the $100,000 were disproportionate to those of EMIA, the court further determined that it was equitable to reimburse the Wilsons for one-half of their attorney fees and costs from EMIA's portion of the funds. Accordingly, the court awarded $75,817.69 to the Wilsons and $24,182.31 to EMIA.

¶18    The Wilsons do not challenge the district court's factual findings. Instead, they assert that the district court's allocation of the interpleaded funds was incorrect for two reasons: (1) "wrongful death claimants have 'superior equity'" over an insurer attempting to enforce its subrogation rights, and (2) there is a "priority of payment" in situations, like this one, where there are multiple parties competing for the same settlement proceeds. We address these arguments in turn.

¶19    First, relying on *Hill v. State Farm Mutual Automobile Insurance Co.*, 765 P.2d 864 (Utah 1988), the Wilsons assert that "parents in a Utah wrongful death action have 'superior equity' over a subrogated insurer and are entitled to be made whole." We are not persuaded.

¶20 In *Hill*, our supreme court explained that "[s]ubrogation is an equitable doctrine and is governed by equitable principles." *Id.* at 866. "This doctrine," the court continued, "can be modified by contract, but in the absence of express terms to the contrary, the insured must be made whole before the insurer is entitled to be reimbursed from a recovery from the third-party tort-feasor." *Id.* In other words, in the absence of a clear contract to the contrary, an insurer cannot assert its equitable subrogation rights against a tortfeasor unless its insured has been made whole. *See id.*

¶21 The equitable-subrogation and made-whole principles described in *Hill* are inapplicable to this case. Indeed, in *Wilson II*, our supreme court ruled that EMIA's authority to sue for subrogation was based in contract—EMIA's insurance policy with Jessica Wilson. 2017 UT 69, ¶¶ 9–10, 19, 416 P.3d 355. The court explained that "[t]he made-whole principle . . . arise[s] as a matter of our common law of equitable subrogation" and that the made-whole principle "'can be modified by contract.'" *Id.* ¶ 18 (quoting *Hill*, 765 P.2d at 866). Observing that EMIA's policy with Jessica specifically "recognized EMIA's authority 'to pursue its own right of Subrogation against a third party' without regard to whether the insured 'is made whole by any recovery,'" the supreme court stated that "[i]t is difficult to imagine a clearer statement of EMIA's authority to sue for subrogation in its own name and without regard to full 'make-whole' compensation for the Wilsons." *Id.* ¶ 19. Because Jessica's policy with EMIA was sufficiently clear to contract away the common law principles of equitable subrogation, the made-whole principle—the general rule that the insured be made whole before the insurer can recover from the tortfeasor—does not apply in this case.

¶22 Second, the Wilsons assert that Utah law establishes "[a] priority of payment in competing claims." More specifically, they assert that "[w]hen victims (like the Wilsons) and a

subrogated insurer (like EMIA) compete for the same settlement proceeds, Utah law establishes a priority of payment, and gives first priority to the claimant with 'superior equity.'" (Emphasis omitted.) The Wilsons cite Section 5 of Article 16 of the Utah Constitution, and *Oliveras v. Caribou-Four Corners, Inc.*, 598 P.2d 1320 (Utah 1979), to support their "first priority" argument.

¶23    Section 5 of Article 16 of the Utah Constitution provides, "The right of action to recover damages for injuries resulting in death, shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation, except in cases where compensation for injuries resulting in death is provided for by law." Utah Const. art. XVI, § 5. Our supreme court has observed that Article 16, Section 5 "enshrines two separate protections on the right to recover for wrongful death": (1) "that the right to recover damages 'shall never be abrogated'" and (2) "that the amount of the damages 'shall not be subject to any statutory limitation.'" *Smith v. United States*, 2015 UT 68, ¶ 18, 356 P.3d 1249. The Wilsons provide no explanation or analysis as to how either protection has been implicated or violated in this case. Moreover, as EMIA correctly observes, the Wilsons "provide no argument or analysis as to how Article Sixteen of the Utah Constitution supposedly supports their proposition that [they] have a superior right of recovery over EMIA." Because the Wilsons' argument is "devoid of any meaningful analysis," we conclude that it is inadequately briefed and decline to address it further. *See State v. Garner*, 2002 UT App 234, ¶ 12, 52 P.3d 467 (quotation simplified).

¶24    Citing *Oliveras v. Caribou-Four Corners, Inc.*, 598 P.2d 1320 (Utah 1979), the Wilsons also assert that "heirs have a superior right to be made whole ahead of the insurer which paid medical expenses, even in light of an arguably conflicting statutory scheme." But *Oliveras* does not stand for the proposition advanced by the Wilsons. In that case, after the decedent was killed in a workplace accident, the State Insurance Fund (the

Fund) paid out compensation benefits to the decedent's dependent heirs who qualified for such benefits under the workers' compensation statute then in effect. *Id.* at 1321–22. The decedent also had two nondependent heirs who did not receive any worker's compensation benefits, but they were later awarded damages in a separate wrongful death action. *Id.* at 1322. The dependent heirs also received damages in the wrongful death action. *Id.* The workers' compensation statute then in effect authorized the Fund to seek reimbursement from any amount received in the wrongful death action "for the payments made by the Fund to dependents." *Id.* The Fund sought to be reimbursed from both the dependent and nondependent heirs for the compensation benefits it had paid out. *Id.* The Utah Supreme Court ultimately determined that, while the Fund was entitled to reimbursement from the dependent heirs' share of the recovery in the wrongful death action, the Fund was *not* entitled to reimbursement from the share of the nondependent heirs' recovery, as the nondependent heirs had received no workers' compensation benefits from the Fund. *See id.* at 1324–25.

¶25　Essentially, the *Oliveras* case dealt with the Fund's statutory right to reimbursement from certain heirs and the limitations of those rights as against other heirs. As EMIA correctly observes, *Oliveras* had nothing to do "with the general priority of an heir's claim versus an insurer's claim against a third-party tortfeasor." Accordingly, we conclude that *Oliveras* is inapplicable to the present case. The Wilsons have not cited any other authority to support their "first priority" argument, and they have therefore failed to demonstrate that they have a superior right to the interpleaded funds.

¶26　Turning to the district court's equitable allocation of the interpleaded funds, as previously discussed, "[w]hen a district court fashions an equitable remedy, we review it to determine whether the district court abused its discretion." *Collard v. Nagle*

*Constr., Inc.*, 2006 UT 72, ¶ 13, 149 P.3d 348. Here, the district court recognized that the interpleaded funds were insufficient to satisfy either of the Wilsons' or EMIA's claims, and it divided the funds equally between the parties. The court then equitably reimbursed the Wilsons, out of EMIA's portion of the funds, for one-half of their attorney fees and costs. Although equity might have countenanced the court awarding more of the interpleaded funds to the Wilsons, equity did not demand that the court do so. The Wilsons received approximately three-fourths of the interpleaded funds, and we are unable to conclude that the court abused its discretion in allocating the funds as it did. *See id.*

## CONCLUSION

¶27   We conclude that the Wilsons' argument that EMIA's claim was barred by Utah Code section 78B-3-107 is inadequately briefed. We further conclude that the district court acted within its discretion in allocating the interpleaded funds. We therefore affirm the district court's allocation of those funds.

———————