**2018 UT App 202**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DEAN HAMILTON,
Appellant.

Opinion
No. 20170115-CA
Filed October 25, 2018

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 151902046

Herschel Bullen, Attorney for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and DIANA HAGEN concurred.

TOOMEY, Judge:

¶1     Dean Hamilton pleaded guilty to one count of attempted securities fraud. As part of the plea agreement, the State agreed to dismiss the remaining charges and to stipulate to complete and court-ordered restitution in the amount of $38,000. The district court accepted Hamilton's plea but did not accept the amount of restitution stipulated to by the parties. Instead, the court ordered Hamilton to pay $382,085 in complete and court-ordered restitution. Hamilton appeals the restitution order, contending the court abused its discretion in departing from the parties' stipulation and failing to consider his ability to pay and the rehabilitative effect of the restitution amount. Hamilton further contends the court violated his constitutional

right "to be free from the imposition of excessive fines." We conclude Hamilton has inadequately briefed his constitutional argument and therefore do not address the merits of that claim. We further conclude the district court was not bound by the parties' stipulated restitution agreement and did not exceed its authority when it ordered Hamilton to pay restitution for criminal offenses for which he admitted guilt. Accordingly, we affirm.

BACKGROUND

¶2 For nearly two years, Hamilton sold securities for a company called Galileo Financial LLC (Galileo). Hamilton was a licensed insurance agent, but he was not licensed to sell securities for most of the time he worked as an independent contractor for Galileo. Hamilton sold securities in the form of promissory notes, purporting to "offer private placement securities investments in commercial and residential property development and rentals, as well as an automobile loan business for individuals with poor credit." These promissory notes were issued by various companies "owned and operated by Dee Allen Randall." Randall operated these various companies as a Ponzi scheme,[1] "comingling investor funds and transferring them among [the companies], using investor funds to pay interest to

---

1. A Ponzi scheme is "[a] fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments." *Ponzi scheme*, Black's Law Dictionary (10th ed. 2014). Under these types of schemes, "[m]oney from the new investors is used directly to repay or pay interest to earlier investors, [usually] without any operation or revenue-producing activity other than the continual raising of new funds." *Id.*

prior investors or to pay commissions, and using investor funds for private use." Randall eventually declared bankruptcy, but "he continued to raise capital for [the companies] . . . through agents such as Hamilton."

¶3 Between 2009 and early 2011, Hamilton sold the securities to four investors, who lost a total of $512,242. Hamilton did not know that Randall was running a Ponzi scheme and, according to the State, "had [nothing] to do with comingling funds or with using new investor money to pay old investors back." But Hamilton was dishonest about his qualifications and misrepresented to the investors that he was a financial advisor who was properly licensed to sell securities. He also represented that the "investment companies were sound with a 15 year history" and that there was "next to no risk."

¶4 Following an investigation into Randall, his companies, and Hamilton, the State charged Hamilton with three counts of securities fraud, three counts of transacting business as an unlicensed broker-dealer or agent, three counts of sale of an unregistered security, and one count of pattern of unlawful activity.

¶5 Based in large part on Hamilton's cooperation with the State's investigation of Randall, the State offered Hamilton a plea deal. In exchange for pleading guilty to one count of attempted securities fraud, a class A misdemeanor, the State agreed to dismiss all remaining charges and recommend that Hamilton not serve a jail sentence but instead be placed on probation for thirty-six months and pay restitution. Hamilton admitted in his plea statement that he "attempted to make untrue statements of material facts or omitted to state material facts necessary in order to make the statements made . . . not misleading" and that these statements or omissions were made "in connection with the offer or sale of a security, directly or indirectly," to one explicitly named victim (Victim) "and othe[r]s." Hamilton agreed "that the

acts described in the applicable sections of the Affidavit of Probable Cause describe [his] conduct for which [he is] criminally liable." He acknowledged that he "may be ordered to make restitution to any victim or victims of [his] crimes, including any restitution that may be owed on charges that are dismissed as part of [the] plea agreement." He further acknowledged that "any charge or sentencing concession or recommendation of probation or suspended sentence . . . made or sought by either defense counsel or the prosecuting attorney are <u>not</u> binding on the judge."

¶6 Attached to Hamilton's plea statement was the plea agreement, which included the parties' stipulation for restitution. The stipulation required Hamilton to pay $38,000 in "'complete' and 'court ordered' restitution" during his thirty-six month probationary period. The stipulation included that Hamilton would pay $5,000 at the time he entered his plea and would pay $500 per month for thirty-six months with a "balloon payment for any balance remaining" at the end of his probation. The plea agreement also provided that Hamilton "agree[d] to abide by any other terms and conditions as may be imposed upon him by the [district court]."

¶7 At a preliminary hearing, the State and Hamilton asked the court to accept Hamilton's guilty plea. In reciting the facts supporting the plea, the State described Hamilton's conduct toward the named Victim only, without reference to the other investors. The State said that Hamilton met with Victim "several times, reviewed her financial situation and documents, and recommended an investment" that he was not authorized to sell, and that he misrepresented that he had "researched the investment and found it to be a solid company and a safe investment." The district court accepted his guilty plea, finding that it was knowing and voluntary. But the court concluded it would need a presentence report before it could determine Hamilton's sentence and restitution obligation.

¶8    Adult Probation and Parole (AP&P) prepared a presentence report, which recounted that Hamilton sold securities without a license while working for Galileo, but that he represented that he had all necessary qualifications. Hamilton met with four individuals at credit unions, and they invested a total of $512,242. He "used the credit union platform to gain the trust and confidence of credit union members to sell the [securities] in order to make a commission." Hamilton earned $33,000 in commissions from his securities sales. The State requested Hamilton pay the amount he earned in commissions for those sales, with an additional $5,000 to be paid to Randall's Bankruptcy Trustee for the fees incurred while handling the bankruptcy proceedings related to Galileo. AP&P recommended that Hamilton serve "15 days in jail with work release" and pay the stipulated amount of restitution consistent with the plea agreement. It also recommended, consistent with the plea agreement, that Hamilton "not work in securities."

¶9    At the sentencing hearing, Hamilton stated he did not agree with the presentence report's statement that he "represented himself to investors as a financial advisor properly licensed and trained to sell the securities." But he did "agree with . . . the basic big picture . . . that [he] worked in credit unions and he did sell products that [Randall] was advertising and selling." Hamilton stated, "There hasn't been a day in the last five years that I haven't fallen asleep thinking about the people that have been hurt by my actions."

¶10   The prosecutor spoke next and stated, "The State stands by its recommendation as set forth in the plea agreement that [Hamilton] not be incarcerated, but that he be placed on court probation for 36 months. During which time he'll make payments for restitution in the total amount of $33,000." Hamilton had paid $6,000 toward restitution by the time of the hearing.

¶11    The prosecutor asked if he "could just add some context" to the State's recommendation. He explained that Hamilton's cooperation in the civil investigation against Randall was "helpful" in reaching a resolution and that "one of the purposes of filing charges against [Hamilton] was possibly obtaining his cooperation against [Randall]." The State was "not asserting that [Hamilton] had anything to do with comingling funds or with using new investor money to pay old investors back . . . . That really [fell] more on [Randall]." The State further stated that Hamilton's testimony at Randall's trial that Randall's "instruction [to] some of his subordinates to destroy paperwork that could be incriminating . . . was really one of the key pieces of evidence that . . . resulted in [Randall] deciding . . . [to] plead guilty." The State also explained that, after considering Hamilton's ability to pay, it "certainly wanted the victims to get something back rather than nothing. There is . . . somebody who is going to pay a price for this, and that's [Randall]. A very heavy price." Randall was "the more culpable party."

¶12    The district court was not persuaded by either parties' statements. It stated that Hamilton "took the money from the victims," in an amount greater than $500,000, and that "[w]hether [Hamilton] was working for somebody else, it doesn't make any difference." The court explained that, if it followed the State's recommendation, there would be "no punishment here." Instead, the court determined it would sentence Hamilton to 365 days in jail, and would suspend that sentence and place him on court probation for thirty-six months, but only after he served 250 days in jail on work release. The court also stated its intent to impose $512,242 in restitution as a condition of probation, but it set a restitution hearing for a later date.

¶13    At the restitution hearing, the court received exhibits containing supporting documents of Hamilton's financial declaration. The court also heard testimony from Hamilton

about his income and expenses. It took the matter under advisement and issued a memorandum decision.

¶14    The court found that the victims lost $512,242 as a result of Hamilton's conduct, but that the statute of limitations barred the recovery of restitution for securities sold five years before Hamilton was charged. After subtracting the amount outside of the statute of limitations and considering Hamilton's ability to pay, the court ordered $382,085 in restitution. The court explained that, although the parties agreed to a restitution amount, Hamilton agreed in his plea statement that the court was not bound by the sentencing recommendations. The court also addressed Hamilton's motion to reconsider his jail sentence and denied it, finding "no legal basis to reconsider the sentence." Hamilton appeals.

ISSUES AND STANDARDS OF REVIEW

¶15    Hamilton first contends the district court exceeded its authority when it ordered him to pay restitution greater than the amount stipulated to by the parties because it was "bound by the stipulation." Second, Hamilton contends the district court abused its discretion by ordering $382,085 in restitution without considering all legally relevant factors for restitution. "We will not disturb a [district] court's restitution order unless it exceeds that prescribed by law or otherwise abused its discretion." *State v. Bickley*, 2002 UT App 342, ¶ 5, 60 P.3d 582 (quotation simplified). But "we review a [district] court's interpretation of restitution statutes for correctness." *Id.*

¶16    Third, Hamilton contends the "court's restitution order violates [his] right to be free from the imposition of excessive fines" under the federal and state constitutions. *See* U.S. Const. amend. VIII; Utah Const. art. 1, § 9. But Hamilton concedes this issue was not raised before the district court and is therefore

unpreserved. He states that the issue "qualifies . . . for appellate review under the doctrines of ineffective assistance of counsel, plain error, manifest injustice[,] and exceptional circumstances." *See State v. Johnson*, 2017 UT 76, ¶¶ 18–19, 416 P.3d 443. He refers this court to a different section of his brief that articulates the elements of each of those doctrines, but fails to apply any of them to his constitutional argument. *See Wilson v. Educators Mutual Ins. Ass'n*, 2018 UT App 155, ¶ 12 ("An appellant must cite the legal authority on which its argument is based and then provide reasoned analysis of how that authority should apply in the particular case, including citations to the record where appropriate." (quotation simplified)); *see also id.* ¶ 14 ("An appellate court is not a depository in which a party may dump the burden of argument and research." (quotation simplified)). Hamilton's argument is therefore inadequately briefed and we do not address whether his constitutional rights were violated. *See State v. Padilla*, 2018 UT App 108, ¶ 19.

## ANALYSIS

### I. The Scope of the District Court's Authority

¶17 Hamilton contends the district court exceeded its authority when it ordered restitution in an amount that included all four victims' losses, asserting that he pleaded guilty with regard to conduct connected only to Victim. Relatedly, he argues that the district court was bound to accept the amount of restitution to which the parties stipulated. We address each argument in turn.

### A. Hamilton Admitted to Harming Four Victims

¶18 "When a defendant enters into a plea disposition or is convicted of criminal activity that has resulted in pecuniary damages, in addition to any other sentence . . . it may impose,

the court shall order that the defendant make restitution" to the victims of his criminal offense, "or for conduct for which the defendant has agreed to make restitution as part of a plea disposition." Utah Code Ann. § 77-38a-302(1) (LexisNexis 2017). And when the district court determines restitution for an offense, "the offense shall include any criminal conduct admitted by the defendant to the sentencing court or to which the defendant agrees to pay restitution." *Id.* § 77-38a-302(5)(a); *see also State v. Ruiz*, 2013 UT App 166, ¶ 9, 305 P.3d 223 ("[A] defendant may be ordered to pay restitution only for pecuniary loss resulting from a crime he either was convicted of or admitted responsibility for."), *overruled on other grounds by State v. Ogden*, 2018 UT 8, 416 P.3d 1132.

¶19 Here, Hamilton pleaded guilty to one count of attempted securities fraud. The plea statement and the amended information to which the plea statement referred stated that Hamilton "attempted to make untrue statements of material facts or omitted to state material facts necessary in order to make the statements made . . . not misleading" and that these statements or omissions were made "in connection with the offer or sale of a security, directly or indirectly," to Victim "and others." Hamilton also stated in his plea statement that he understood he "may be ordered to make restitution to any victim or victims of [his] crimes, including any restitution that may be owed on charges that are dismissed as part of [the] plea agreement."[2]

¶20 In addition, at the sentencing hearing, Hamilton did not dispute the information with respect to the four victims or the amount they lost—other than to challenge the losses outside of

---

2. Given that the plea statement expressly anticipates restitution arising from dismissed charges, we struggle to see how the record could be much clearer.

the statute of limitations—and instead stated that he agreed with the "big picture" of the presentence report's recitation of facts. He also told the court, "There hasn't been a day in the last five years that I haven't fallen asleep thinking about the people that have been hurt by my actions." The presentence report "explicitly referred to all four victims by name and listed the amount of losses they incurred 'in this case.'" And the plea agreement, attached to the plea statement, stated that Hamilton's restitution would be paid to the "Trustee for the Dee Randall bankruptcy action, to be disbursed by the Trustee to the *victims* identified." (Emphasis added.)

¶21    The record before us therefore shows that Hamilton admitted to causing financial harm to more than one victim and the district court did not exceed its discretion when it ordered restitution to compensate all of them. *See Ruiz*, 2013 UT App 166, ¶¶ 9–11; *State v. Bickley*, 2002 UT App 342, ¶¶ 9–10, 60 P.3d 582.

B.    The District Court Was Not Bound by the Parties' Stipulation

¶22    Hamilton contends the district court was bound to follow the parties' stipulation with respect to restitution because (1) the plea statement and agreement are contracts and therefore "court[s] should be held . . . bound by the stipulation of the parties" to those contracts, and (2) the plea agreement should be interpreted consistent with Hamilton's expectations. We reject both arguments.

¶23    First, "plea agreements are *like* contracts, [but] they are not contracts, and therefore contract doctrines do not always apply to them." *State v. Francis*, 2017 UT 49, ¶ 11, 424 P.3d 156 (quotation simplified). Plea agreements are negotiated between the defendant and the State; the district court is not a party to the plea agreement. *See* Utah R. Crim. P. 11(i)(1) ("The judge shall not participate in plea discussions prior to any plea agreement

being made by the prosecuting attorney."); *cf. State v. Thurston*, 781 P.2d 1296, 1300 (Utah Ct. App. 1989) ("The imposition of [a] sentence is entirely a responsibility of the trial judge, who must not be involved in any advance understandings between the prosecutor and the defendant." (quotation simplified)). Thus, the court is not required to accept a plea agreement and is not bound by its terms. *See State v. Stringham*, 2001 UT App 13, ¶ 14, 17 P.3d 1153 ("Even where the [State] and the defendant reach a plea agreement, the court is not required to accept it." (quotation simplified)). [3]

¶24 Second, it is irrelevant that Hamilton expected to pay only $38,000 in restitution because only the State was bound to uphold its end of the bargain. We agree with the State's assertion that "[t]he furthest that contract principles can carry Hamilton is to . . . construe the agreement in a way that requires *the State* to perform in compliance with Hamilton's reasonable expectations." The State upheld its end of the bargain by arguing

---

3. Although the court is not a party to the plea negotiations, rule 11 of the Utah Rules of Criminal Procedure provides a mechanism by which "the judge, upon request of the parties, may permit the disclosure of the tentative agreement and the reasons for it," and the judge "may then indicate to the prosecuting attorney and defense counsel whether the proposed disposition will be approved." Utah R. Crim. P. 11(i)(2). If the judge "decides that final disposition should not be in conformity with the plea agreement, the judge shall advise the defendant and then call upon the defendant to either affirm or withdraw the plea." *Id.* R. 11(i)(3). This procedure was not used in this case, which suggests that the plea agreement was not intended to be contingent on the court agreeing to sentence Hamilton in accordance with the parties' stipulation.

at the sentencing hearing and the restitution hearing that Hamilton should pay only $38,000 in restitution.

¶25 The language of the plea statement and the plea agreement further support our conclusion that the district court was not bound by the parties' stipulation. Hamilton acknowledged in his plea statement that "any charge or sentencing concession or recommendation of probation or suspended sentence . . . [is] <u>not</u> binding on the judge."[4] Under Utah law, the district court "shall order that the defendant make restitution to the victims" "*in addition to any other sentence* it may impose." Utah Code Ann. § 76-3-201(4)(a) (LexisNexis 2017) (emphasis added); *see also id.* § 77-38a-302(1) ("[I]n addition to

---

4. Hamilton also argues that he did not understand that restitution was encompassed in the language contained in the plea statement that "any charge or sentencing concession or recommendation of probation or suspended sentence . . . [is] <u>not</u> binding on the judge." He asserts that this language was ambiguous with respect to whether the court could reject the stipulation of restitution and "led [Hamilton] to believe that any agreement between him and the State with regard to restitution was a settled matter." To the extent Hamilton argues that he would not have entered the guilty plea had he known the court was not bound to accept the restitution stipulation, that argument goes to the validity of his guilty plea, not to the district court's discretion to reject the stipulation. *See State v. Gibson*, 2009 UT App 108, ¶ 10, 208 P.3d 543 (providing that "the longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant" (quotation simplified)). Because Hamilton did not move to withdraw his guilty plea, we do not have jurisdiction to address that argument. *See State v. Ott*, 2010 UT 1, ¶ 18, 247 P.3d 344.

any other sentence . . . , the court shall order that the defendant make restitution . . . as part of a plea disposition."). A stipulation to the restitution amount is encompassed in a "sentencing concession or recommendation," as provided in Hamilton's plea statement, and Hamilton was therefore aware that the stipulated restitution recommendation was "<u>not</u> binding on the judge." Further, the plea agreement, attached to the plea statement, stated that "[Hamilton] agree[d] to abide by any other terms and conditions as may be imposed upon him by the [c]ourt."

¶26    We therefore conclude the district court was not bound by the parties' stipulated restitution amount and did not exceed its authority in ordering Hamilton to pay restitution.

## II. The District Court's Discretion to Order Restitution

¶27    Hamilton contends the district court abused its discretion by ordering restitution when it had not considered the factors listed under Utah Code section 77-38a-302(5)(c). We disagree.

¶28    Under the Crime Victims Restitution Act, district courts are required to make "two separate restitution determinations, one for complete restitution and a second for court-ordered restitution." *State v. Mooers*, 2017 UT 36, ¶ 8, 424 P.3d 1 (quotation simplified); *see also* Utah Code Ann. § 77-38a-302(2)(a)–(b) (LexisNexis 2017). Complete restitution is "the restitution necessary to compensate a victim for all losses caused by the defendant." Utah Code Ann. § 77-38a-302(2)(a). In determining the amount of complete restitution, the court shall consider, as relevant here, "the cost of the . . . loss if the offense resulted in . . . loss or destruction of property of a victim of the offense." *Id.* § 77-38a-302(5)(b)(i). Court-ordered restitution is "the restitution the court having criminal jurisdiction orders the defendant to pay as a part of the criminal sentence." *Id.* § 77-38a-302(2)(b). Court-ordered restitution is therefore "a subset of complete restitution that, among other things, takes into account

the defendant's circumstances." *Mooers*, 2017 UT 36, ¶ 11 (quotation simplified). Under this statutory framework, the district court is "require[d] . . . to 'determine' complete restitution[] but [has] discretion with regard to the imposition of court-ordered restitution." *State v. Ogden*, 2018 UT 8, ¶ 42, 416 P.3d 1132 (quotation simplified).

¶29 District courts are afforded "wide latitude and discretion in sentencing," *see State v. Helms*, 2002 UT 12, ¶ 8, 40 P.3d 626 (quotation simplified), which includes ordering restitution, *see* Utah Code Ann. § 76-3-201(4)(a) (LexisNexis 2017). "As a general rule, we presume that the district court made all the necessary considerations when making a sentencing and restitution decision[.]" *State v. Beckstrom*, 2013 UT App 186, ¶ 19, 307 P.3d 677 (quotation simplified). When a district court determines the monetary sum of court-ordered restitution, it "shall consider:"

> (i) the factors listed [under consideration of complete restitution];
>
> (ii) the financial resources of the defendant, as disclosed in the financial declaration described in Section 77-38a-204;
>
> (iii) the burden that payment of restitution will impose, with regard to the other obligations of the defendant;
>
> (iv) the ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court;
>
> (v) the rehabilitative effect on the defendant of the payment of restitution and the method of payment; and

> (vi) other circumstances that the court determines
> may make restitution inappropriate.

Utah Code Ann. § 77-38a-302(5)(c).

¶30    Here, the district court relied on the presentence report to determine the amount of complete restitution. At the sentencing and restitution hearings, Hamilton did not challenge the total number of victims or their financial losses—other than to challenge the amount outside of the statute of limitations. The court agreed that the statute of limitations had run on some of the losses and determined that complete restitution on the remaining losses amounted to $382,085. In addition, Hamilton argued to the court that it needed to consider all of the factors under Utah Code section 77-38a-302(5)(c) and explained that some of those factors weigh in favor of imposing less than the full amount of complete restitution. Further, the State argued that court-ordered restitution of $38,000 was appropriate based on the circumstances of the case—including that Hamilton was less culpable, provided substantial cooperation in the case against Randall, pleaded guilty only to attempted securities fraud, and received only the commission for his sales.

¶31    In its restitution order, the district court rejected the parties' stipulation and explained that, "[a]fter the restitution hearing, the court still [did] not agree with the restitution of $38,000." The court further found that Hamilton "has the ability to pay restitution as ordered," given his net income as provided in his financial documents and his testimony at the restitution hearing. *See id.* § 77-38a-302(5)(c)(ii). Although the restitution payment "may be a hardship on [Hamilton] because his expenses" are about equal to his net income, he is still in a position to pay restitution, "but maybe needs to reassess his expenses." *See id.* § 77-38a-302(5)(c)(iii). The court also determined that Hamilton had the ability to pay restitution in monthly installments of $500 per month, and denied Hamilton's

request to reduce the monthly payments for the period of his work release. *See id.* § 77-38a-302(5)(c)(iv).[5]

¶32 We conclude the district court acted within its discretion when it ordered restitution in an amount greater than what the

---

5. Hamilton argues that the district court did not consider the "rehabilitative effect" of restitution imposed against him. But his argument fails because, throughout the record, Hamilton placed the court on notice of Utah Code section 77-38a-302(5)(c) and its requirements. Hamilton also stated in his Memorandum in Support of His Position on Restitution that he "agree[d] that there is a rehabilitative effect by ordering the defendant to pay some restitution." Although he challenged the amount of restitution below and provided mitigating circumstances with respect to the rehabilitative effect of the amount of restitution ordered, he cannot show that the court failed to consider the "rehabilitative effect" factor. *See State v. Beckstrom*, 2013 UT App 186, ¶ 19, 307 P.3d 677 ("As a general rule, we presume that the district court made all the necessary considerations when making a sentencing and restitution decision[.]"(quotation simplified)). Instead, his arguments amount to a disagreement with the district court's conclusion about the rehabilitative effect of imposing a greater amount of restitution than anticipated in the plea agreement. But he has not shown that the district court's "actions [were] inherently unfair" or that "no reasonable person would take the view adopted by the [district] court," *see State v. Montiel*, 2005 UT 48, ¶ 24, 122 P.3d 571 (quotation simplified), especially considering that Hamilton acknowledged he "may be ordered to make restitution to any victim or victims of [his] crimes, including restitution that may be owed on charges that are dismissed as part of [the] plea agreement" and he admitted to harming multiple victims.

parties' stipulated to and that the court properly considered the relevant legal factors under Utah Code section 77-38a-302(5)(c).

CONCLUSION

¶33    We conclude the district court had authority to reject the parties' stipulation in the plea agreement to the amount of complete and court-ordered restitution. We further conclude the district court properly interpreted Utah Code section 77-38a-302(5)(c) and did not abuse its discretion when it ordered Hamilton to pay restitution in the amount equal to complete restitution because Hamilton admitted to harming multiple victims. Accordingly, we affirm.

―――――――