**2019 UT App 93**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
LEE EVAN HEDGCOCK,
Appellant.

Opinion
No. 20170040-CA
Filed May 31, 2019

Third District Court, West Jordan Department
The Honorable L. Douglas Hogan
No. 161400207

Andrea J. Garland, Attorney for Appellant

Sean D. Reyes and Jonathan S. Bauer, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

MORTENSEN, Judge:

¶1     Instead of paying $701 per month in child support for the relevant five years (totaling $51,883 with interest) as stipulated and adopted in a divorce decree, Defendant Lee Evan Hedgcock paid $780 total. He was charged with and pled no contest to a single count of criminal nonsupport. Hedgcock now challenges the district court's restitution determination. Because we agree that the district court did not make separate findings as to complete restitution and court-ordered restitution as required by statute and precedent, we vacate the restitution determination and remand for further proceedings consistent with this opinion. Further, Hedgcock challenges the district court's refusal to reduce complete restitution by amounts Hedgcock claims he would not have owed had he filed a petition to modify the

divorce decree in the intervening years. We affirm the district court on this point of law.

BACKGROUND

¶2     Following his divorce, Hedgcock was ordered to pay $701 per month in child support (Decree). The child support amount was based on an imputed wage that was allegedly more than Hedgcock's actual wage. Hedgcock, however, stipulated to the higher imputed wage and child support amount. The Decree provided that "[t]he current Child Support amount shall remain in effect unless modified by [the Office of Recovery Services (ORS)]" and that "each party to this action may request that [ORS] review the Court's child support order for this action to determine whether a modification of the Court ordered child support be pursued." ORS was also joined as a party to the divorce action to clarify and determine Hedgcock's child support obligations moving forward. Although ORS appeared, it did not seek to modify the child support as ordered in the Decree.

¶3     In December 2014, Hedgcock moved the divorce court to "address the issue of his child support." A commissioner declined to set a hearing on the motion but outlined the correct procedure for pursuing an adjustment of child support in a minute entry. The minute entry noted that Hedgcock could seek an adjustment by filing a petition to modify and a financial declaration pursuant to rules 101 and 106 of the Utah Rules of Civil Procedure. Hedgcock did not object to the minute entry and never filed a petition to modify.

¶4     In January 2016, Hedgcock was charged with criminal nonsupport based on an alleged total arrearage, with interest, of $61,310. In other words, from the time the Decree was entered in 2011, to the time he was charged in January

2016 (Charged Period), Hedgcock paid a total of $780 in child support—rather than the $701 per month ordered in the Decree.

¶5    At a preliminary hearing, Hedgcock argued that the total arrearage for the Charged Period was incorrect because ORS should have modified the child support amount when it was joined as a party. But a representative for ORS testified that despite being joined as a party, it typically "would not . . . modify a child support order unless [it had] a written request from one of the parties to do so." And although ORS received written requests from Hedgcock, "the determination was made . . . not to proceed with a modification review because [Hedgcock's] circumstances had not changed from the date that the initial order had been stipulated to." Hedgcock did not petition the divorce court to review ORS's determination.

¶6    The State filed a motion in limine seeking to exclude from trial—among other things—evidence that Hedgcock disagreed with the amount of child support ordered in the Decree. The district court granted the motion, concluding that Hedgcock's "disagreement with the amount of child support he has been ordered to pay is not a relevant issue in this case, and therefore any argument regarding this matter is inadmissible." The court further explained that the Decree is a final order and the only way that Hedgcock's arguments would be relevant is if he had filed a petition to modify in the divorce proceeding. But the court noted, "[T]hat's not what's happened. That's not the facts that are before this court. The facts before this court are there's an order for $701, and that's the existing order [the State is] claiming criminal nonsupport on."

¶7    Hedgcock pled no contest to a single count of criminal nonsupport in return for the State's recommendation of no jail time and a 402 reduction "upon successful completion of

payment of restitution."[1] At sentencing, Hedgcock requested a restitution hearing, "not necessarily to question the amounts . . . but because he would like the Court to consider some of the same things . . . discussed when arguing the motion in limine as toward restitution." The court responded that the criminal proceeding was "not the appropriate place" to challenge the Decree. And because there was no pending petition to modify the Decree, the court clarified that the only permissible arguments at the restitution hearing would be to establish the amounts that Hedgcock already paid against the existing arrearage. After a brief recess, Hedgcock entered his no-contest plea,[2] and requested to be sentenced immediately without a pre-sentencing report (PSR) or review of his financial declaration.

¶8     The district court held a restitution hearing in December 2016. At the outset, Hedgcock renewed his objection to the amount owed during the Charged Period. The court responded that, absent a pending petition to modify the Decree, Hedgcock's past-due child support obligation was a fixed amount and "there's no possibility this order is going to be anything different than what it is." Hedgcock then submitted to the court that the parties had reached a stipulation on the amount of arrearage based on the operative Decree—which was determined to be $51,833. The court asked the parties if there was anything else that needed to be taken care of at the hearing, and Hedgcock's counsel replied, "I don't believe so." Specifically, Hedgcock did not ask the district court to consider anything other than (1) whether child support had actually ever been ordered under

---

1. A "402 reduction" refers to a reduction of the degree of a criminal conviction under Utah Code section 76-3-402.

2. Hedgcock did not reserve his right to appeal the ruling on the motion in limine under rule 11(j) of the Utah Rules of Criminal Procedure.

the Decree and (2) whether the support order should have been modified at some point in the past.

¶9 The district court entered a stipulated sentencing order on December 27, 2016. The order provided that "[r]estitution . . . owed to [Hedgcock's ex-wife] as of December 8, 2016, is entered for $51,883." The district court did not indicate whether the ordered amount was for complete restitution, court-ordered restitution, or both.

¶10 Hedgcock appeals.

ISSUES AND STANDARDS OF REVIEW

¶11 Hedgcock raises two issues on appeal. He first contends that the district court misapplied the Crime Victims Restitution Act (Restitution Act)[3] when it merged complete restitution with court-ordered restitution without making separate findings. "We will not disturb a district court's restitution order unless it exceeds that prescribed by law or otherwise abused its discretion." *State v. Hamilton*, 2018 UT App 202, ¶ 15, 437 P.3d 530 (cleaned up). "But we review a district court's interpretation of restitution statutes for correctness." *Id.* (cleaned up). Hedgcock did not preserve this issue and therefore asks us to review for plain error. *See State v. Johnson*, 2017 UT 76, ¶¶ 15, 19, 416 P.3d 443. "To demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the [district] court; and (iii) the error is harmful." *Id.* ¶ 20 (cleaned up).

¶12 Next, Hedgcock argues that the district court erred in determining the restitution amount because it refused to

---

3. The Restitution Act is codified at Utah Code sections 77-38a-101 to -601.

consider factors—such as the actual income of Hedgcock and his ex-wife—that could have changed the child support owed during the Charged Period. We review the district court's determination of restitution for abuse of discretion. *Hamilton*, 2018 UT App 202, ¶ 15.

## ANALYSIS

### I. The Restitution Act

¶13 Hedgcock argues that the district court erred "by conflating complete restitution with court-ordered restitution." Generally, complete restitution is "necessary to compensate a victim for all losses caused by the defendant" and is determined by taking into account "all relevant facts" of the case. *State v. Mooers*, 2017 UT 36, ¶ 9, 424 P.3d 1 (cleaned up) (listing relevant facts to be considered in determining complete restitution). Court-ordered restitution, on the other hand, is a subset of complete restitution that the court "orders the defendant to pay as a part of the criminal sentence." *See id.* ¶ 10 (cleaned up). To determine the amount of court-ordered restitution, courts consider the facts for complete restitution and additional factors set forth in the Restitution Act. *Id.* Finally, "[t]he plain language of the Restitution Act contains a clear directive that district courts are to make two separate restitution determinations, one for complete restitution and a second for court-ordered restitution," *id.* ¶ 8 (cleaned up), and failure to do so, or even "merg[ing] them into one order," is error, *id.* ¶ 12.

¶14 Here, the district court did not make separate findings, nor did it indicate whether it was ordering complete restitution or court-ordered restitution. Simply put, the district court's failure to engage in this analysis was error. *Id.* However, because Hedgcock failed to preserve this issue, he must also show that the court's error was obvious and harmful. *See State v. Johnson*,

2017 UT 76, ¶¶ 20–21, 416 P.3d 443. We discuss each element in turn.

¶15    "For an error to be obvious . . . the law governing the error [must be] clear or plainly settled at the time the alleged error was made." *State v. Jamieson*, 2017 UT App 236, ¶ 27, 414 P.3d 559 (cleaned up), *cert. granted*, 421 P.3d 439 (Utah 2018). Here, the law governing restitution is both clear and plainly settled. First, relevant portions of the Restitution Act—which was enacted in 2001—mandate that "[i]n determining restitution the court shall determine complete restitution and court-ordered restitution," Crime Victims Restitution Act, ch. 137, § 8, 2001 Utah Laws 699, 704; "the court shall make the reasons for the decision part of the court record," *id.*; and "[i]n determining the monetary sum and other conditions for court-ordered restitution, the court shall consider the factors" for complete restitution as well as:

> (i) the financial resources of the defendant and the burden that payment of restitution will impose, with regard to the other obligations of the defendant; (ii) the ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court; (iii) the rehabilitative effect on the defendant of the payment of restitution and the method of payment; and (iv) other circumstances which the court determines may make restitution inappropriate.

*Id.* at 705.[4] Second, our supreme court settled the law governing complete restitution and court-ordered restitution, *see State v.*

---

4. These portions of the Restitution Act were essentially unchanged when the stipulated sentencing order was entered in this case. *See* Utah Code Ann. § 77-38a-302(1)–(5) (LexisNexis

(continued…)

*Laycock*, 2009 UT 53, ¶¶ 20–24, 214 P.3d 104 (holding that district courts are "clearly required to determine . . . restitution, as set out in [the Restitution Act]"), seven years prior to entry of the stipulated sentencing order. In light of the plain language in the Restitution Act and the holding in *Laycock*, we conclude that the requirement to make separate and distinct findings for complete restitution and court-ordered restitution was obvious.

¶16 Next, Hedgcock argues that the district court's error was harmful. We agree. As Hedgcock contends, the entire portion of restitution in this case is being treated as court-ordered,[5] and he faces "criminal enforcement mechanisms" such as contempt of court or the imposition of a sentence for failure to pay. *See Mooers*, 2017 UT 36, ¶ 18 n.3. Conversely, had the court conducted the proper analysis and determined that any portion of the amount owed was complete restitution, rather than court-ordered restitution, that portion would be enforceable only as a civil judgment. *See id.* We conclude that the district court's error is at least potentially harmful because it exposes Hedgcock to

_____

(…continued)

2017). Because the statutory provision in effect at the relevant time does not differ in any material way from the provision now in effect, we cite the current version of the Utah Code.

5. The stipulated sentencing order is silent as to whether the restitution ordered in this case was "complete" or "court-ordered." The State contends that the restitution amount set by the district court represented court-ordered restitution. In support of its position, the State relies on the district court's statement at sentencing that if Hedgcock fails to pay the amount of restitution ordered "[it was] not going to have any qualms about locking [him] up for a substantial period of time."

criminal penalties for amounts of restitution that may not have been court-ordered restitution.[6]

¶17    We are unpersuaded by the State's argument that Hedgcock invited this error by stipulating to the amount of restitution and/or failing to object to the stipulated sentencing order. Even where, as here, a defendant stipulates to "complete" restitution, the plain language of the Restitution Act still requires that the court make separate findings for complete restitution and court-ordered restitution. Accordingly, Hedgcock's failure to object to the stipulated sentencing order is a preservation defect but nothing more.

¶18    We readily understand that, given the sentencing stipulation made by the parties, the district court may well have intended to order complete and court-ordered restitution in the same amount. But the court did not articulate that. And given the bright-line precedent of *Mooers* and *Laycock*, we conclude that the district court's failure to indicate what type of restitution was being ordered—and its failure to justify its conclusion with adequate factual findings—was plain error. Therefore, we vacate the restitution order and remand to the district court to clarify the amount of complete restitution and court-ordered restitution it imposed in this case.[7]

---

6. This is not to say that a district court cannot conclude that complete restitution and court-ordered restitution should be in the same amounts, so long as the court considers the factors contemplated by the Restitution Act. *State v. Laycock*, 2009 UT 53, ¶ 28, 214 P.3d 104.

7. On remand, if the district court finds that its ability to consider some of the factors under the Restitution Act is limited because Hedgcock has waived the PSR and its associated financial

(continued…)

## II. Restitution Amount

¶19 Relatedly, Hedgcock argues that the district court erred when it calculated restitution, whether complete or court-ordered, without considering whether the child support owed during the Charged Period should have been adjusted in the domestic case. In other words, Hedgcock contends that the district court should have allowed him to launch, in his criminal case, essentially, a petition to modify the Decree retroactively for the Charged Period. We disagree.

¶20 When Hedgcock entered his no-contest plea, he effectively conceded that the State had sufficient evidence to prove the elements of criminal nonsupport. *See* Utah R. Crim. P. 11(e)(4)(A) ("The court . . . may not accept the plea until the court has found . . . the defendant understands the nature and elements of the offense to which the plea is entered . . . ."). In other words, Hedgcock conceded that during the Charged Period he had children under the age of eighteen, for whom he knowingly failed to provide support; his children would have been in needy circumstances but for support received from a source other than him; and the total arrearage was in excess of $10,000. *See* Utah Code Ann. § 76-7-201(3) (LexisNexis 2017) (listing the elements of criminal nonsupport).

¶21 Given that Hedgcock knew of his child support obligations, he could have filed a petition to modify in the divorce proceedings prior to being charged with criminal

---

(…continued)

declaration and did not offer any evidence concerning his present ability to pay, it would be appropriate for the court to articulate those facts. However, the district court must still undertake its best efforts to consider the factors even in the face of missing information. *Id.* ¶¶ 22–23.

nonsupport. His failure to do so does not alleviate his obligation to pay child support under the Decree, nor does it change the fact that his children were dependent on his support, which he nevertheless failed to pay. *See id.* § 78B-12-112(3) ("Each payment or installment of child . . . support under any support order . . . is, on and after the date it is due: a judgment with the same attributes and effect of any judgment of a district court . . . [and] not subject to retroactive modification by this or any other jurisdiction . . . ."). And even if Hegdcock had filed a petition to modify, any change to the Decree would apply only after the date of the petition. *See id.* § 78B-12-112(4) ("A child or spousal support payment under a support order may be modified with respect to any period during which a modification is pending, but only from the date of service of the pleading . . . .").

¶22   Thus, the total arrearage for the Charged Period in this case was a final judgment, *see id.* § 78B-12-112(3), and even a successful petition to modify the amount of child support would, at best, change only the amount owed retroactively to the date the petition was filed, *see id.* § 78B-12-112(4). Accordingly, we conclude that the district court did not abuse its discretion in refusing to consider the potential merits of a petition to modify that was never filed and was therefore legally irrelevant.

CONCLUSION

¶23   We conclude that the district court erred in neglecting to make separate and distinct findings for complete restitution and court-ordered restitution, and on this basis, we vacate the restitution order and remand for further proceedings consistent with this opinion. But, we conclude the district court did not err in refusing to consider whether the amount of child support ordered by the Decree should have been changed prior to Hedgcock being charged with criminal nonsupport.

_____